GEORGE E. BLAKESLEE, INCORPORATED, RELATOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY, ET AL., RESPONDENTS.

Submitted December 2, 1920—Decided March 1, 1921.

1. Since chapter 274 of the laws of 1920 is in derogation of the property rights, a city, in order to avail itself of the powers given therein, must bring itself within the terms thereof.
2. Chapter 274 of the laws of 1920, which empowers cities of the first and second class to regulate and restrict the location of buildings designed for specified uses, does not authorize the commission of building restrictions in such city to zone or restrict a section of land "strictly for residential purposes."

On *mandamus*.

Before Justices SWAYZE, PARKER and BLACK.

For the relator, *Marshall Van Winkle.*

For the respondents, *John Bentley* and *John Milton.*

The opinion of the court was delivered by

SWAYZE, J.    This is a *mandamus* to compel the city authorities to file the plans for a garage which the relator proposes to build on its property in Jersey City, in which it intends to have a show room for the exhibition and sale of automobiles.    The defence is that the defendants have zoned or restricted that portion of the city, wherein the plot of land of the relator described in the said writ is situated, for residential purposes only as therein set forth.    The pleadings are in such shape that they do not present the constitutional question as to the right of the municipal authorities to restrict property in accordance with the act.    It is rather difficult to say what the city authorities meant by their pleading.    It is called a demurrer, but it does not bear the form of a demurrer and on the contrary sets forth an issuable

fact. Perhaps it was meant as a return to the alternative writ. If so it fails to set forth what the statute requires. The power granted by the act of 1918, now superseded by the amendment in chapter 274 of the laws of 1920, is not an absolute power so far as the present case is concerned. The power is defined by sections 2 and 3 of the act of 1920. Those sections empower the common council, governing commission or board of public works of cities of the first and second class to regulate and restrict the location of buildings designed for specified uses, as well as the location of trades and industries. The governing body of the municipality is authorized to divide the city into districts of such number, shape and area as it may deem best suited to carry out the purpose of the section and there may be imposed for each district regulations designating the uses for which buildings may not be erected or altered, and designating the trades and industries that shall be excluded or subjected to special regulations. Section 3 provides for a commission on building districts and restrictions and for the composition of that commission; it enacts also that the governing body of the city shall not determine the restriction until after the final report of the commission so appointed and provides for a hearing after such report. Tentative reports are also authorized and upon those the commission on building district and restrictions is required to give a hearing. After the final report the common council, governing commission or board of public works are required to afford the persons interested an opportunity to be heard. It nowhere appears in these pleadings that there was a final report of the commission on building district and restrictions. Since this statute is in derogation of the property rights of the relator, the city, in order to avail itself of the powers given by the statute, must bring itself within the terms thereof. This it has failed to do.

There is another reason of equal force. Disregarding all technical objections to the pleadings, and looking at it broadly as presenting the question of the validity of the restrictions, the best we can make out of the pleadings is that the commission on building district and restrictions, so

called, has zoned or restricted a section of land in which the relator's plot is situated "strictly for residential purposes," and the commission on building district and restrictions has determined that only residences shall be erected on the boulevard on which the relator's land fronts. This, however, is not the power given by the act. That power requires that the regulations imposed shall designate the uses for which buildings may not be erected or altered and designate the trades and industries that shall be excluded or subject to special regulations. For instance, this language may have been meant to authorize regulations forbidding the erection or alteration of buildings to be used as sales rooms for automobiles, and they might designate the automobile business in its various forms as excluded. But this is very different from zoning or restricting a section of land "strictly for residential purposes." It is impossible to tell what that means. Perhaps it means the same as the subsequent language contained in the writ, that is to say, residences, but whether a building which is to be used strictly for residential purposes would include the purpose that residences are frequently used for the pleadings do not show. It is a matter of common knowledge and has come to our knowledge through proceedings in this court that dwellings, which we suppose may properly be called residences, are more and more being used not only for residences but for a garage, in the cellar or basement of the residence. Is this a residential purpose, for undoubtedly the buildings in which the question has been brought before us were residences. In some cases we awarded a *mandamus,* in other cases we did not, but the reason for our decision in each case had nothing to do with any restriction under the act of 1918.

So far as the pleadings show, and we have nothing else before us, there are no restrictions legally in force and we must therefore, on the record, assume that the building permit is improperly denied. But, inasmuch as the parties seem to be seeking in good faith to ascertain and determine their legal rights we are not disposed to award a *mandamus* without affording an opportunity to present on the record the

question which the parties really desire to have decided. We will therefore withhold judgment until there can be an opportunity to frame an adequate record.