COOPER LUMBER COMPANY, A NEW JERSEY CORPORA-
TION, RELATOR, v. JOHN DAMMERS. BUILDING IN-
SPECTOR OF THE BOROUGH OF RUTHERFORD, RE-
SPONDENT.

Submitted June 18, 1923—Decided March 22, 1924.

**Ordinances—Zoning—Location of Lumber Yard in Territory In-
cluded in Residence Zone—Evidence Showed That Particu-
lar Locality Had no Appeal for Residences—Mandamus
Ordered.**

On rule to show cause why an alternative or peremptory
writ of *mandamus* should not issue.

Before Justices KALISCH and KATZENBACH.

For the relator, *Stanton T. Lawrence.*

For the respondent, *John M. Bell.*

PER CURIAM.

This case is before us on a rule to show cause why an alter-
native or peremptory writ of *mandamus* should not issue to
John Dammers, building inspector of the borough of Ruther-
ford, directing him to issue to the relator, the Cooper Lumber
Company, a permit permitting it to erect certain structures
upon its property in the borough of Rutherford, described in
these proceedings. The facts are uncontroverted.

The relator is a New Jersey corporation which has been
engaged for many years past in the purchase and sale of
lumber for building purposes. In August, 1922, it acquired
a tract of land on the easterly bank of the Passaic river, in
Rutherford, having a frontage on the river of one hundred
and seventy-five feet, and a frontage of two hundred feet on
the westerly side of Riverside avenue, a street substantially
parallel with the Passaic river, and distant therefrom approxi-

mately two hundred and fifty feet. This tract has been used by the relator because of its water facilities for receiving from boats, rough lumber in large quantities. This lumber is stored upon the property in sheds and in the open until wanted for retail distribution. This property, prior to the relator's acquisition thereof, had been used for thirty years as a yard for storing coal and building materials, and for wharfage purposes. Immediately adjoining this property on the south is another dock used for handling coal. To the south of this last-mentioned dock is another tract of land upon which there are buildings owned and operated by a company engaged in manufacturing. Across the road from this manufacturing concern is a cement block plant. To the north of the relator's tract there is a vacant piece of land located between the westerly side of Riverside avenue and the Passaic river, having a frontage on the river of one hundred feet. On February 2d, 1923, this tract of land was purchased by the relator with the intention of building a dock and sheds thereon. There is only a single dwelling in the neighborhood, located on the easterly side of Riverside avenue, opposite the cement block plant. The relator purchased the land in question to the north of its original acquisition to extend its plant to meet the increased demands of Rutherford and the other growing communities in the neighborhood for lumber. On April 4th, 1922, the borough of Rutherford adopted an ordinance entitled: "An ordinance to regulate and restrict the location hereafter of trades and industries and the subsequent location of buildings designed for a specified use in any designated area and to regulate and limit the height and bulk of buildings hereafter erected and to regulate and determine the area of yards, courts and other open spaces and for said purposes to divide the borough of Rutherford into districts."

This ordinance was enacted in pursuance of the provisions of chapter 240 of the laws of 1920, as amended by chapter 162 of the laws of 1922. The ordinance so zoned the borough of Rutherford that the property of the relator originally ac-

quired and the lot which it subsequently acquired were placed in "residence No. 2 districts." Within this district the ordinance provides that no building or premises shall be used for other than one or more of the uses permitted in residence No. 1 districts, with few exceptions, which are immaterial, because the exceptions do not permit the use of the relator's property for the purposes which it desires to use it. The effect of this provision is to place within a residential district the properties above mentioned which are all used for industrial or business purposes.

The relator, on March 15th, 1923, addressed to the mayor and council of the borough of Rutherford, an application requesting such a change in the zones as would take its property out of the residential section and make of it an industrial property. An ordinance with this purpose in view was drafted but was rejected. On May 22, 1923, the relator made an application to the building inspector of the borough of Rutherford for a permit to construct a lumber shed upon the property which it had recently acquired. The application complied with all the provisions relating to an application of this character. On May 23d, 1923, the building inspector notified the relator that its application had been rejected by the building committee on account of its being in residence district No. 2.

The questions involved in this case are not essentially different from those which have been considered in several cases in this court since municipalities began to enact under the powers conveyed by the statutes above referred to "zoning ordinances." Chapter 162 of the laws of 1922, in giving to the governing bodies of municipalities power by ordinance to regulate and restrict the location of industries and residences, and the subsequent location of buildings designed for a specific use in any designated area, and the division of municipalities into districts best suited to carry out the purposes of the act, provided that "such regulations shall be designed to promote the public health, safety and general welfare. The governing body shall give reasonable consideration, among

other things, to the character of the district, its peculiar suitability for particular uses, the consideration of property values, and the direction of building development in accord with a well-considered plan."

We are of the opinion that the governing body of Rutherford, in placing the property of the relator in a residence district, did not give that reasonable consideration to the character of the district called for by the act. For many years the property of the relator first acquired and the properties in the vicinity thereof have been used for industrial purposes. There is but one dwelling-house in the vicinity. The fact that the property which the relator desires to use as an extension to its lumber yard was for many years plotted for building lots, and no lot was sold and used for residential purposes, is perhaps the best evidence of the unavailability of the land for residential purposes. The zoning ordinance seeks to change that which has been an industrial or business section into a residential section. This, we think, is unwarranted. The relator's property has a value for industrial purposes because of its proximity to the river and other properties similarly used. It has little value for residential purposes. To deprive the relator of a use for his property for which it is best fitted is to deprive him of a part of the value of his property. The use to which he desires to put it is not one which is in any sense detrimental to the public health, safety, or general welfare. Under the views of this court expressed in the recent case of *Ignacuinas* v. *Risley*, 1 *N. J. Adv. R.* 1023, we are of the opinion that the relator's right of private property guaranteed to him by the federal and state constitutions is invaded.

The purpose of the placing of this property in a residential section is, as we infer from the testimony and briefs, for the purpose of beautifying in time this portion of the bank of the Passaic river. In other words, the purpose of prohibiting this particular piece of property from being used for the purpose for which it is best fitted is æsthetic. As was stated by Mr. Justice Swayze, in the case of *Passaic* v. *Paterson Bill Posting*

*Co.,* 72 *N. J. L.* 285, "æsthetic considerations are a matter of luxury and indulgence rather than necessity, and it is necessity alone which justifies the exercise of police power to take property without compensation."

The respondent contends that the relator has no standing in this court because it acquired the property which it seeks to use as an extension of its present yard after the passage of the ordinance of April 4th, 1922. This matter was considered in the case of *Ignacuinas* v. *Risley, supra,* and the court in that case said "the fact that the relator purchased the property after the passage of the ordinance makes no difference as the relator stood in the position of his grantor and obtained by the conveyance all the rights with respect to the property which the grantor possessed."

In this class of cases *mandamus* is the proper proceeding. *Ignacuinas* v. *Risley, supra; Blakeslee* v. *Jersey City,* 112 *Atl. Rep.* 593; *English* v. *Asbury Park,* 115 *Id.* 64; *Keavy* v. *Randall,* 1 *N. J. Adv. R.* 312.

In view of the many recent cases in this court upon the subject of zoning ordinances we feel that it is unnecessary to consider further the questions involved in this case. A peremptory writ of *mandamus* will be awarded directing John Dammers, the inspector of buildings of Rutherford, to issue to the relator a building permit. If the respondent desires to have the pleadings moulded so as to permit this decision to be reviewed by the Court of Errors and Appeals, the court will, upon application, permit the same to be done.