THE CITY OF PASSAIC, DEFENDANT IN ERROR, v. PATER-
SON BILL POSTING, ADVERTISING AND SIGN PAINT-
ING COMPANY, PLAINTIFF IN ERROR.

Submitted March 27th, 1905—Decided November 20th, 1905.

A city ordinance requiring that sign or billboards shall be constructed
not less than ten feet from the street line is a regulation not rea-
sonably necessary for the public safety, and cannot be justified as
an exercise of the police power.

On error to the Supreme Court.  For opinion of that court,
see 42 *Vroom* 75.

For the plaintiff in error, *William B. Gourley.*

For the defendant in error, *James Sullivan.*

The opinion of the court was delivered by

SWAYZE, J.  The plaintiff in error was convicted of the
violation of an ordinance of the city of Passaic regulating
signs or billboards, and the conviction was affirmed by the
Supreme Court.  42 *Vroom* 75.

The ordinance provides that no sign or billboard shall be
at any point more than eight feet above the surface of the
ground, and requires that it shall be constructed not less than
ten feet from the street line.

The statutory authority for this ordinance is the act of
April 8th, 1903 (*Pamph. L., p.* 513), which authorizes the
governing body of any city to regulate the size, height,
location, position and material of all fences, signs, bill-
boards and advertisements.  The statute does not limit the
power of the municipal authorities to cases where the struc-
tures may be in a condition dangerous to the public safety,
and the first section of the ordinance absolutely prohibits
signs and billboards within ten feet of the street line.  In
the present case the billboard was erected in 1902, prior to

the passage of the act, and the police justice has certified that no evidence was offered of its being dangerous to life or limb because of insecure fastening.

It is obvious that the effect of the ordinance is to deprive the landowner of the ordinary use for a lawful business purpose of a portion of his land. Such deprivation is a taking within the meaning of the constitutional provision (*Trenton Water Power Co.* v. *Raff, 7 Vroom* 335, approved by this court in *Pennsylvania Railroad Co.* v. *Angel,* 14 *Stew. Eq.* 316), and where no compensation is given to the landowner the taking can only be justified if it is done in the exercise of the police power of the state.

Upon this question the legal rule is accurately stated in the opinion of the Supreme Court in this case, as follows: "The true rule to be extracted from the cases, and the one abundantly supported by them, is that when statutes are obviously intended to provide for the public safety, and the ordinances prescribed under them are reasonable and in compliance with their purposes, both the statutes and the ordinances are lawful and must be given due effect. When the control attempted to be exercised over private rights is in excess of that essential to effectuate such legitimate authority, it deprives the owner of his property by circumscribing the use of it, without giving him the just compensation secured to him in such case by the organic law."

The Supreme Court held that because the erection of such signs might be attended with danger to the public at times of severe storms, or by the decay of their supports, the ordinance was not without legal authority.

In our opinion the legality of the ordinance does not depend upon the possibility of danger thus suggested, but upon whether such a regulation is reasonably necessary for the public safety. There must always be a possibility of danger from the erection of any structure and from its decay, but such a possibility is not sufficient to justify the municipal authorities in depriving a man of the ordinary use of his land. In all our cities and towns fences and buildings are erected upon the street line, involving the same or even

greater possibility of danger from severe storms or natural decay, but it would hardly be maintained that a municipality could be authorized by the legislature to compel the owners of buildings already erected to take them down or move them back ten feet from the street line. Yet the danger to the public from bricks or slates, ice and snow, falling from a building is much greater than any possible danger from a billboard. In determining whether a regulation is reasonably necessary to secure the public safety, and therefore within the legitimate exercise of the police power, existing habits and customs are of great weight, and the universal custom of building upon the street line is cogent evidence that the public safety does not require that structures like billboards should be set back from the line. The very fact that this ordinance is directed against signs and billboards only, and not against fences, indicates that some consideration other than the public safety led to its passage. It is obvious from the face of the ordinance that the object of the first section was not to secure the public safety; that section contains no reference to a dangerous condition of billboards, while the second section expressly undertakes to deal with those that become dangerous.

We think the control attempted to be exercised is in excess of that essential to effect the security of the public. It is probable that the enactment of section 1 of the ordinance was due rather to æsthetic considerations than to considerations of the public safety. No case has been cited, nor are we aware of any case which holds that a man may be deprived of his property because his tastes are not those of his neighbors. Æsthetic considerations are a matter of luxury and indulgence rather than of necessity, and it is necessity alone which justifies the exercise of the police power to take private property without compensation.

In two similar cases the courts of other states have reached the same result. *Crawford* v. *Topeka,* 51 *Kan.* 756; *Commonwealth* v. *Boston Advertising Co.,* 188 *Mass.* 348.

The view taken by the majority of the appellate division

in New York is to the same effect. *People* v. *Green,* 83 *N. Y. Sup.* 460.

In Missouri it was held that the owners of property along a boulevard could not be restricted from building within forty feet of the street (*St. Louis* v. *Hill,* 116 *Mo.* 527), and in Maryland it was held that an ordinance of Baltimore forbidding the grant of a building permit unless in the judgment of the municipal board the size, general character and appearance of the building would conform to the general character of the buildings previously erected in the same locality, was invalid. The proposed building in that case was for the purpose of showing wild animals, and in reality conducting a continuous circus performance upon one of the most beautiful streets in Baltimore. *Boslock* v. *Sams,* 95 *Md.* 400.

The case differs from *Rideout* v. *Knox,* 148 *Mass.* 368.

The statute in that case gave a right of action in tort to an adjoining owner where a fence *unnecessarily* exceeding six feet in height was maliciously erected and maintained. Two elements were necessary for the right of action—the unnecessary character of the fence and the malicious motive—and the court held that not only must the motive be malicious, but that the malevolence must be the dominant motive. Such a statute does not deprive the landowner of any ordinary or beneficial use of his property. It merely prevents him from using it to injure his neighbors without benefit to himself.

In *Rochester* v. *West,* 164 *N. Y.* 510, the ordinance under consideration went no further than to require the permission of the common council for the erection of a billboard more than six feet in height, and that permission could only be given after notice to owners and occupants of land within two hundred feet. The ordinance did not authorize the council to regulate the location and position of the billboard, and we must assume that in granting or withholding the permission the council would act judicially and solely with reference to considerations of the safety, health or morals of the public. The court said: "We think this statute conferred upon the common council of the city

authority to regulate boards erected for the purpose of bill posting, so far, at least, as such regulation was necessary to the safety or welfare of the inhabitants of the city or persons passing along its streets." The invalidity of the ordinance in the present case, in our opinion, lies in the fact that it exceeds that necessity.

Since the effect of the ordinance is to take private property without compensation, and cannot be justified as an exercise of the police power, it is invalid.

The judgment of the Supreme Court should be reversed and a judgment entered reversing the conviction.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 11.