IN THE MATTER OF THE ESTATE OF
JOSEPH GEORGE DITTRICH, DECEASED.

Superior Court of New Jersey
Appellate Division

Submitted October 30, 1978—Decided November 13, 1978.

Before Judges CONFORD, PRESSLER and KING.

*Messrs. Wherry and Casale,* attorneys for the appellant (*Mr. Charles J. Casale, Jr.* on the brief).

*Mr. Stephen J. Zielinski,* attorney for the respondent.

The opinion of the court was delivered by

PRESSLER, J. A. D. The novel question raised by this will construction case is whether the anti-lapse statute, *N. J. S. A.* 3A:3–13, applies where the deceased devisee is a substituted or contingent beneficiary who has failed to survive the primary beneficiary. The trial judge held that in the circumstances before it the statute applied and we concur.

Testator Joseph George Dittrich executed his last will in 1953 leaving his entire residuary estate to his sister Ann and providing further that if she failed to survive him, it would go to his brother John. At the time of execution testator and his sister Ann were unmarried. John was married and had two daughters. Testator also had another sister and two brothers not named in his will, all three of whom were unmarried. John died in 1973 leaving his two daughters surviving. Ann died in 1974, still unmarried and without issue. Testator died in 1976, also still unmarried and without issue. In addition to his nieces, John's daughters, testator was survived by his other sister and one of his two other brothers, both of whom remained unmarried and without issue.

It is clear that had Ann died before John, there would be no question of the applicability of the anti-lapse statute and the consequent right of John's daughters to share equally in the estate to the exclusion of testator's unnamed surviving sister and brother. Is that result changed by the fact that John died before Ann? We think not.

*N. J. S. A.* 3A:3–13, applicable to this will,[1] provides in full that

When a devise or bequest is made by will to a child or other descendant of the testator or to a brother or sister or any descendant of a brother or sister of the testator, and such devisee or legatee shall, during the life of the testator, die testate or intestate leaving any child or any descendant of a child of such devisee or legatee surviving the testator, such devise or legacy shall not lapse but shall best in any such child or descendant of a child of such devisee or legatee as if such devisee or legatee had survived the testator and died intestate. This section shall not apply where the testator shall by will have otherwise directed in regard to the children or descendants of such devisee or legatee.

The facts here meet all of the expressed conditions of this statute. John was testator's brother, he was a named devisee or legatee, he died during the life of the testator, he left his own children surviving both himself and testator, and testator in his will made no other direction.

The caveator, testator's surviving brother, seeks to avoid application of the statute and thereby to accomplish an intestacy by contending that when the devisee or legatee is a contingent or substituted beneficiary whose own possibility of presumptively taking is extinguished prior to testator's death, the right of his issue to succeed to his interest is also extinguished. In support of this contention he relies upon *Haas v. Canton of Berne,* 140 *N. J. Eq.* 240, 245 (Ch. 1947), which held that "Where a contingent legacy is left to a legatee who dies before the contingency is met, then the legacy lapses." That decision is, however, not applicable here because the legatee there involved was not within the class of relatives whose issue are protected by the anti-lapse statute. Clearly, as *Haas* holds, a legacy not vested will

---

[1] *N. J. S. A.* 3A:3–13 has been replaced by *N. J. S. A.* 3A:2A–23, taken from Uniform Probate Code § 2–605. We do not, however, perceive any provision of the new statute which sheds any interpretive light on the problem before us.

ordinarily lapse if vesting is dependent upon a contingency which cannot be met. The question, then, to which *Haas* had no need to address itself and which is, indeed, the precise question before us, is whether the anti-lapse statute operates to prevent the lapse in that situation where the contingent legatee is within the "anti-lapse" class of legatees.

In the absence of any direct authority, we cannot perceive any persuasive rationale for refusing to apply the anti-lapse statute. First, it literally applies to the situation before us. Second, the whole point of the anti-lapse statute is to avoid, in respect of the included class of relatives, the lapse which would otherwise occur when such a legatee is prevented from taking the legacy by reason of his having died before the testator. It is thus the timing of that legatee's death *vis-a-vis* the death of testator alone that ought to invoke the statute. That is to say, if at the time of testator's death the legatee were both alive and would have taken, then, if the legatee is within the anti-lapse class, his issue takes if he himself cannot take because he failed to survive. So here. Had John survived testator, he would have taken since Ann had predeceased testator. Therefore, John's children would take in his stead. We see no reason why the fact that Ann died after John rather than before John should alter the result, since, determined as of the date of testator's death, John, if alive, would have taken. See, *e.g.,* in apparent accord, 3 *Restatement, Property,* § 263, Comment (b), at 1320–1321 (1940), noting, but without respect to the order of death of *B* and *C,* that anti-lapse legislation applies in favor of *C's* issue where both *B* and *C* predecease testator and where there is a gift to *C* only if *B* does not survive testator.

We are further persuaded that applicability of the anti-lapse statute here in favor of John's daughters is in accord with testator's probable intent. See, generally, *In re Estate of Ericson,* 74 *N. J.* 300 (1977); *Engle v. Siegel,* 74 *N. J.* 287 (1977); *Wilson v. Flowers,* 58 *N. J.* 250 (1971).

The search for probable intent is here limited to the indications inferable from the rather meager factual com-

plex recited. Nevertheless, we are impressed with the force here of Judge Clapp's observation that "The [anti-lapse] statute has become so much a part of the thinking of every experienced scrivener that a testator employing such a scrivener may be presumed to have framed his will with it in mind." 5 *N. J. Practice* (*Clapp, Wills and Administration*), § 270 at 500 (1962). See also, *In re Wintermute*, 97 *N. J. Eq.* 289 (E. & A. 1925); *Enz v. Bowan*, 98 *N. J. Eq.* 514 (Ch. 1925). Testator had chosen not to name all of his brothers and sisters in his will but only his sister Ann and his brother John. Of all his siblings, only John had children. He did not change his will after both Ann and John had died. If he is presumed to have been aware of the anti-lapse statute, then we are satisfied of his assumption from the outset that if both Ann and John failed to survive him, John's daughters would take. We are satisfied that this probable intent of the testator was unaffected by the order of deaths of Ann and John so long as he, the testator, was survived, if not by John himself, then at least by John's issue.

Affirmed.