STATE OF NEW JERSEY (BY THE BOROUGH OF MILLTOWN), PLAINTIFF-APPELLANT, v. DONALD L. MILLER, DEFENDANT-RESPONDENT.

Argued October 23, 1979—Decided July 8, 1980.

 

 ██

 ██

 █

 █

 █

 

 

*Robert J. Lecky* argued the cause for appellant.

*Arthur H. Miller* argued the cause for respondent.

The opinion of the Court was delivered by

CLIFFORD, J.

This case questions the extent to which a municipality may constitutionally regulate signs in a residential neighborhood.

In August, 1976 defendant, Donald L. Miller, placed a four by eight foot sign on the lawn in front of his home, located in a residentially zoned district of the Borough of Milltown. The sign contained the following message:

WELCOME!!

PROSPECTIVE RESIDENTS OF

LAWRENCE BROOK GLEN

THIS RESIDENT AND OTHERS OF RIVA AVE.

WANT TO WELCOME YOU TO THIS

FLOOD HAZARD AREA.

GOOD LUCK!!

INFORMATION AVAILABLE.

Defendant was charged with violating section 20–9.1(a) of the Borough of Milltown's zoning ordinance, which permitted only the following types of signs in residential zones: [1]

1. A decorative sign showing name or address of house or family, no larger than two square feet in area.

2. Signs advertising the prospective sale or rental of the premises upon which it is maintained, or signs identifying firms working at a site (one sign per firm), or indicating the future use of the site. Sale or rental signs shall be removed within one month after the new construction has been occupied. Maximum sign area per sign in square feet shall not exceed 15 per cent of the frontage of the lot along the street [which the] sign is to be located[,] measured in feet.

3. A sign erected by the borough, county, state or federal government.

4. Identification signs for and signs announcing events of churches, schools, playgrounds, parks and public utility installations. Total area of signs shall not exceed 25 feet in area on each lot.

---

[1]Subparagraphs (b) and (c) of section 20–9.1 are more expansive with respect to signs permitted in business and industrial zones in the Borough.

Subsection 20–9.1(d)(4), which applies to signs in business and industrial zones as well as in residential zones, states that "[a]ll signs with an area exceeding six square feet shall require a permit." The complaint filed by the building inspector charged defendant with erecting a sign exceeding six square feet in a residential zone without first obtaining a permit. The Borough stipulated that a permit would have been denied because the sign did not fall within any of the categories set out in Section 20–9.1(a) above.

Defendant was convicted in municipal court and again after a trial *de novo* in the Middlesex County Court. The Appellate Division reversed, holding that the municipal ordinance violated the first amendment by absolutely prohibiting "political and public interest expression" and was unconstitutional as applied to this defendant's sign. 162 *N.J.Super.* 333, 339 (1978). The Borough appealed as of right under *R.* 2:2–1(a)(1). We now affirm.

I

■ The goals of the Borough sign ordinance here are the maintenance of aesthetic charm in the residential neighborhoods and the preservation of property values.[2] The Borough pursues these goals under the zoning component of the police power to promote the general health, safety and welfare of the community.

Under early case law in this state, such goals would have been improper as beyond legitimate municipal powers. See, *e. g.*, *Passaic v. Paterson Bill Posting Co.*, 72 *N.J.L.* 285, 287 (E. &

---

[2]Defendant does not question the statutory authority of the municipality to regulate signs. Such authority is found when *N.J.S.A.* 40:55D–62(a) is read with *N.J.S.A.* 40:55D–65(a). *Cf. United Advertising Corp. v. Borough of Raritan*, 11 *N.J.* 144 (1952) (municipalities have right to legislate on subject of billboards). In recent decisions under the Municipal Land Use Law, trial courts have correctly assumed that a municipality has the statutory authority to regulate signs. *Berg Agency v. Maplewood*, 163 *N.J.Super.* 452 (Law Div.1978); *Schoen v. Hillside*, 155 *N.J.Super.* 286 (Law Div.1977). *See also Farrell v. Teaneck*, 126 *N.J.Super.* 460 (Law Div.1974).

A.1905); *O'Melia Outdoor Advertising Co. v. Rutherford*, 128 *N.J.L.* 587, 591 (Sup.Ct.1942); *Cooper Lumber Co. v. Dammers*, 2 *N.J.Misc.* 289, 393, 125 *A.* 325, 327 (Sup.Ct.1924); *Romar Realty Co. v. Haddonfield*, 96 *N.J.L.* 117 (Sup.Ct.1921). The general rule was enunciated by the Court of Errors and Appeals in 1905: "Aesthetic considerations are a matter of luxury and indulgence rather than of necessity, and it is necessity alone which justifies the exercise of the police power to take private property without compensation." *Passaic v. Paterson Bill Posting Co., supra*, 72 *N.J.L.* at 287, 62 *A.* at 268 (municipal ordinance regulating size and location of signs held invalid).

More recently, however, our courts have acknowledged the value and importance of aesthetic concerns in municipal land use law. See *United Advertising Corp. v. Borough of Metuchen*, 42 *N.J.* 1, 5 (1964) (prohibition of outdoor off-site advertising); *Vickers v. Township Committee of Gloucester*, 37 *N.J.* 232, 248 (1962), appeal dismissed and *cert.* den., 371 *U.S.* 233, 83 *S.Ct.* 326, 9 *L.Ed.*2d 495 (1963) (prohibition of trailer camps and parks in an industrial zone); *Napierkowski v. Gloucester*, 29 *N.J.* 481, 494 (1959) (regulation of trailer parking); *Pierro v. Baxendale*, 20 *N.J.* 17, 30 (1955) (prohibition of hotels and motels in residential district); *Fischer v. Bedminster Twp.*, 11 *N.J.* 194, 204 (1952) (minimum lot size of five acres upheld); *Lionshead Lake, Inc. v. Township of Wayne*, 10 *N.J.* 165 (1952), appeal dismissed, 344 *U.S.* 919, 73 *S.Ct.* 386, 97 *L.Ed.* 708 (1953) (minimum square feet for homes upheld); *State v. J. & J. Painting*, 167 *N.J.Super.* 384 (App.Div.1979) (regulation of signs in residential zone); *Township of Livingston v. Marchev*, 85 *N.J.Super.* 428, 433 (App.Div. 1964), certif. den., 44 *N.J.* 412 appeal dismissed for want of a substantial federal question, 382 *U.S.* 201, 86 *S.Ct.* 393, 15 *L.Ed.* 2d 269 (1965) (regulation of trailer parking); *Westfield Motor Sales Co. v. Westfield*, 129 *N.J.Super.* 528, 535 (Law Div.1974) (regulation of signs in business district); *Farrell v. Teaneck*, 126 *N.J.Super.* 460, 465 (Law Div.1974) (regulation of signs in residential zone); *Klotz v. Board of Adjustment*, 90 *N.J.Super.* 295, 298 (Law Div.1966) (regulation of height of front yard fences); *cf. Agins v. Tiburon*, 447 *U.S.* 255, 260, 100 *S.Ct.* 2138, 2141,

65 *L.Ed.2d* 106, 111 (1980) (zoning law designed to protect residents from ill effects or urbanization legitimate exercise of police power).

Consideration of aesthetics in municipal land use and planning is no longer a matter of luxury or indulgence. To the extent that our earlier cases may hold to the contrary, they no longer represent sound zoning law. The development and preservation of natural resources and clean, salubrious neighborhoods contribute to psychological and emotional stability and well-being as well as stimulate a sense of civic pride.[3] We therefore hold that a zoning ordinance may accommodate aesthetic concerns.[4] As has been recognized by the United States Supreme Court, consideration of aesthetics may be a legitimate pursuit of the police power of a state:

> The concept of the public welfare is broad and inclusive. * * * The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be

---

[3]Over a century ago Henry David Thoreau gave voice to an aspect of this notion:

> Shall that dirty roll of bunting in the gun-house be all the colors a village can display? A village is not complete, unless it have [these] trees to mark the season in it. They are important, like the town clock. A village that has them not will not be found to work well. It has a screw loose, an essential part is wanting. * * * Of course, there is not a picture-gallery in the country which would be worth so much to us as is the western view at sunset under the elms of our main street. * * *
>
> A village needs these innocent stimulants of bright and cheering prospects to keep off melancholy and superstition. [Thoreau, "Autumnal Tints" (Atlantic Monthly, October 1862).]

[4]This holding is squarely in line with the modern trend to recognize aesthetics as a proper basis for land use regulation. See *John Donnelly & Sons, Inc. v. Outdoor Advertising Bd.*, 369 *Mass.* 206, 221, 339 *N.E.2d* 709, 718 (1975). See also *John Donnelly & Sons v. Mallar*, 453 *F.Supp.* 1272, 1278 (S.D.Me.1978); *Suffolk Outdoor Advertising Co. Inc. v. Hulse*, 43 *N.Y.2d* 483, 373 *N.E.2d* 263, 265, 402 *N.Y.S.2d* 101 (1977); *Markham Advertising Co. v. State*, 73 *Wash.2d* 405, 439 *P.2d* 248 (1968), appeal dismissed 393 *U.S.* 316, 92 *S.Ct.* 1126, 31 *L.Ed.2d* 512, reh. den., 393 *U.S.* 1112, 89 *S.Ct.* 854, 21 *L.Ed.2d* 813 (1969). See generally Annotation, "Aesthetic Objectives or Considerations as Affecting Validity of Zoning Ordinance," 21 *A.L.R.3d* 1222 (1968).

beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled. [*Berman v. Parker*, 348 *U.S.* 26, 33, 75 *S.Ct.* 98, 102, 99 *L.Ed.* 27, 38 (1954) (citations omitted).]

Accordingly, we have recently recognized that the preservation of family-style living, the " 'blessings of quiet seclusion' " and " 'refreshment of repose and tranquility of solitude' " are legitimate zoning goals. *State v. Baker*, 81 *N.J.* 99, 106 (1979) (quoting *Berger v. State*, 71 *N.J.* 206, 223 (1976)).

Concern with aesthetics has been a subject of legislative activity as well. Among the purposes of Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to –92, are the provision of "adequate light, air, and open space", *N.J.S.A.* 40:55D–2(c), and the promotion of "a desirable visual environment through creative development techniques and good civic design and arrangements", *N.J.S.A.* 40:55D–2(i). See *Home Builders League v. Township of Berlin*, 81 *N.J.* 127, 145 (1979). The conservation of property values is subsumed within the purposes of the Law, *N.J.S.A.* 40:55D–2(a), (e) and (i). *Home Builders League v. Township of Berlin, supra*, 81 *N.J.* at 145. Indeed, at least one state court has noted that considerations of aesthetics and economics are intimately related in this context, *Metromedia, Inc. v. San Diego*, 592 *P.2d* 728, 735, 154 *Cal.Rptr.*, 212, 219 (1979), and that "[t]o hold that a city cannot prohibit off-site commercial billboards for the purpose of protecting and preserving the beauty of the environment is to succumb to a bleak materialism." *Id.* at 748, 592 *P.2d* at 748, 154 *Cal.Rptr.* at 232. The California court went on to quote Ogden Nash:

I think that I shall never see

A billboard lovely as a tree.

Indeed, unless the billboards fall,

I'll never see a tree at all. [*Id.*]

However, the injection of aesthetic considerations and values into the zoning law process is not without problems. See generally Williams, "Subjectivity, Expression, and Privacy: Problems of Aesthetic Regulation," 62 *Minn.L.Rev.* 1 (1977). Nor is the power to zone based on aesthetics a limitless one. *Cf. Home Builders League v. Berlin Twp., supra*, (minimum floor area requirements unrelated to legitimate zoning purposes);

*State v. Baker, supra* (zoning regulation limiting residency based on number of unrelated persons in single housekeeping unit unconstitutional). The case before us now is a fine illustration of the problems in and the limits to aesthetic zoning, particularly when it conflicts with beauty of a different sort—free speech.

## II

The only signs allowed in the residential zones here are those expressly set forth in Section 20–9.1(a) of the Borough's ordinance, *i. e.*, (1) decorative name and address plates; (2) "for sale" or "for rent" signs, signs indicating future use, and signs identifying firms doing work on the premises; (3) signs maintained by the local, state or federal government; and (4) identification signs for churches, schools, playgrounds, parks, and public utility installations. Although the defendant was cited for erecting a sign exceeding six square feet without first obtaining a permit, in violation of Section 20–9.1(d)(4), it is apparent that the sign violated the provisions of Section 20–9.-1(a) irrespective of its size.

So construed, and as conceded before us by the Borough, the ordinance precludes a residential property owner from communicating any other than an extremely limited message by the use of stationary signs on his or her property. In particular, the ordinance's restrictions on the manner and place of defendant's speech, so severe as to amount to an absolute ban on political speech, offend the First Amendment.

The message on the defendant's sign concerned a matter of public interest. As such, it is political speech and occupies a preferred position in our system of constitutionally-protected interests. *Murdock v. Pennsylvania*, 319 *U.S.* 105, 115, 63 *S.Ct.* 870, 876, 87 *L.Ed.* 1292, 1300 (1943). As the Appellate Division here correctly noted: "Political expression obviously includes any fair comment on any matter of public interest, whether or not the subject of an election campaign, whether or not embarrassing to the local governing body, and whether or

not irritating to one's neighbors." 162 *N.J.Super.* at 338.[5] Where political speech is involved, our tradition insists that government "allow the widest room for discussion, the narrowest range for its restriction." *Thomas v. Collins*, 323 *U.S.* 516, 530, 65 *S.Ct.* 315, 323, 89 *L.Ed.* 430, 440 (1945). As a result a regulation restricting the time, place or manner of speech will survive constitutional scrutiny only if it (1) can be justified without reference to the content of the regulated speech; (2) serves a significant government interest; and (3) leaves open ample alternative channels for the communication of the information. See, *e. g., Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 *U.S.* 748, 771, 96 *S.Ct.* 1817, 1830, 48 *L.Ed.*2d 346, 363–64 (1976). The governmental interest to be protected must be balanced against the effect of the restriction on protected activities. See, *e. g., Schneider v. New Jersey*, 308 *U.S.* 147, 60 *S.Ct.* 146, 84 *L.Ed.* 155 (1939). In such situations

> the courts should be astute to examine the effect of the challenged legislation. Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions. [*Id.* at 161, 60 *S.Ct.* at 151, 84 *L.Ed.* at 165.]

During the last ten years many states have enacted statutes regulating and even banning signs and billboards as part of

---

[5]Political speech may be distinguished from commercial speech, defined by the United States Supreme Court as follows:

> Our pharmacist does not wish to editorialize on any subject, cultural, philosophical, or political. He does not wish to report any particularly newsworthy fact, or to make generalized observations even about commercial matters. The "idea" he wishes to communicate is simply this: "I will sell you the X prescription drug at the Y price." [*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 *U.S.* 748, 761, 96 *S.Ct.* 1817, 1825, 48 *L.Ed.*2d 346, 358 (1976).]

Although commercial speech is protected under the First Amendment, there is a "common-sense" distinction between speech proposing a commercial transaction and other varieties of speech, including political speech, and thus the constitutional protection accorded to commercial speech is less than is provided to other constitutionally guaranteed expression. *Central Hudson Gas & Electric Corp. v. New York Public Service Commission*, —— *U.S.* ——, 100 *S.Ct.* 2343, 65 *L.Ed.*2d 341 (1980).

zoning laws designed to further aesthetics, preserve property values and promote traffic safety. See, e. g., *Markam Advertising Co. v. State, supra* (Washington State Highway Advertising Control Act of 1961) (cited with approval in *Young v. American Mini Theaters*, 427 *U.S.* 50, 96 *S.Ct.* 2440, 49 *L.Ed.2d* 310, reh. den., 429 *U.S.* 873, 97 *S.Ct.* 191, 50 *L.Ed.2d* 155 (1976)). The constitutionality of such statutes has generally been sustained where political speech is exempted from the ban. *Metromedia, Inc. v. San Diego, supra; John Donnelly & Sons v. Mallar, supra; John Donnelly & Sons, Inc. v. Outdoor Advertising Bd., supra.* But see, *State v. Lotze*, 92 *Wash.2d* 52, 593 *P.2d* 811, appeal dismissed, 444 *U.S.* 921, 100 *S.Ct.* 257, 62 *L.Ed.2d* 177 (1979) (ban pertains only to highway billboards, adequate alternative fora for political speech available elsewhere); *Donnelly Advertising Corp. v. Baltimore*, 279 *Md.* 660, 370 *A.2d* 1127 (1977) (ban encompasses only signs in limited section of city subject to urban renewal project). However, ordinances which exclude political signs from residential districts have uniformly been held unconstitutional. *Baldwin v. Redwood City*, 540 *F.2d* 1360 (9th Cir. 1976), *cert.* den., *sub. nom. Leipzig v. Baldwin*, 431 *U.S.* 913, 97 *S.Ct.* 2173, 53 *L.Ed.2d* 223 (1977); *Ross v. Goshi*, 351 *F.Supp.* 949 (D.Haw.1972); *Peltz v. South Euclid*, 11 *Ohio St.2d* 128, 228 *N.E.2d* 320 (1967).

The constitutionality of the ordinance here cannot be sustained. Significant First Amendment interests are at stake. Adequate alternative means of political communication are not available to owners who are precluded from putting signs and posters in their yards.

> [M]eans of political communication are not entirely fungible; political posters have unique advantages. Their use may be localized to a degree that radio and newspaper advertising may not. With exception of handbills, they are the least expensive means by which a candidate may achieve name recognition among voters in a local election. [*Baldwin v. Redwood City, supra*, 540 *F.2d* at 1368 (footnote omitted).]

As defendant points out, the most effective and least expensive way to reach his intended audience—prospective Riva Avenue home purchasers and his neighbors—was to place a sign in front of his house. While personal contact with neighbors might have

been an alternative means of communication, even that would not be a realistic alternative for reaching prospective purchasers of homes in the affected area.

## III

Because the ordinance so directly cuts to the heart of the First Amendment, we decline to perform judicial surgery or to adopt a narrow construction in an effort to save it. The ordinance is unconstitutional on its face. However, for the benefit of municipalities concerned with the impact of community aesthetics on zoning, we offer for guidance the following comments on the permissible scope of sign regulation.

As noted below, some regulation of signs in municipalities may be permissible if within constitutional limits. The United States Supreme Court has recognized that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value." *Carey v. Brown*, 447 *U.S.* 455, 471, 100 *S.Ct.* 2286, 2295, 65 *L.Ed.*2d 263, 276, (1980).

To withstand the strict constitutional scrutiny required here, the restriction on signs must be tied to a compelling municipal interest as well as to the uses permitted in a given zone. *Schoen v. Hillside, supra*, 155 *N.J.Super.* at 297. This is illustrated in a different context by *Taxpayers Assoc. v. Weymouth Twp.*, 80 *N.J.* 6 (1976), appeal dismissed and *cert.* den., *sub nom. Feldman v. Weymouth*, 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977), where this Court upheld zoning of a mobile home park exclusively for the elderly. In that case Justice Pashman, writing for the Court, held that ordinances adopted under the zoning enabling act "must bear a real and substantial relationship to the regulation of land within the municipality." 80 *N.J.* at 21. While recognizing the municipality's desire to satisfy the social and psychological needs of the elderly, *id.* at 28–31, we required the municipality to articulate tangible, specific objectives promoted by the zoning measure—there the

unusual physical and economic needs of the elderly. *Id.* at 31. We then carefully examine the factual bases of the municipality's conclusion that reserving mobile homes for the elderly in fact served those specific ends. *Id.* at 33–37. See generally "Developments—Zoning", 91 *Harv.L.Rev.* 1427, 1456–57 (1978).

■ As we have announced herein, preservation of aesthetics and property values is a legitimate end for a municipal zoning ordinance. However, to satisfy the analysis called for by *Weymouth Twp.*, described above, the municipality must demonstrate more than a mere desire to preserve property values. It must show that the particular restrictions on signs in fact relate to the stated goal.

■ In keeping with this analysis a municipality may distinguish between commercial and political speech in imposing restrictions on signs. See *Lehman v. Shaker Heights*, 418 *U.S.* 298, 94 *S.Ct.* 2714, 41 *L.Ed.*2d 770 (1974); *Railway Express Agency, Inc. v. New York*, 336 *U.S.* 106, 69 *S.Ct.* 463, 93 *L.Ed.* 533 (1949). Certain commercial enterprises may be excluded from residential zones, see, *e. g., Pierro v. Baxendale, supra,* and residents should therefore not be compelled to live with commercial advertisements in the form of signs publicizing those excluded uses.[6] This distinction has been endorsed by the United States Supreme Court in *Young v. American Mini Theaters, supra* :

> We have recently held that the First Amendment affords some protection to commercial speech. We have also made it clear, however, that the content of a particular advertisement may determine the extent of its protection. * * * A state statute may permit highway billboards to advertise businesses located in the neighborhood but not elsewhere * * *. The measure of constitutional protection to be afforded commercial speech will surely be governed largely by

---

[6]Thus, "for sale" signs, although commercial in character, may not be excluded from a residential neighborhood, see *Linmark Assoc., Inc. v. Willingboro*, 431 *U.S.* 85, 97 *S.Ct.* 1614, 52 *L.Ed.*2d 155 (1977), inasmuch as they relate to a use permitted in a residential zone. By contrast the commercial signs of contractors working on homes may be excluded in keeping with the analysis described above. *State v. J. & J. Painting, supra.*

the content of the communication. [427 *U.S.* at 68–69, 96 *S.Ct.* 2440, 49 *L.Ed.*2d at 325 (footnotes omitted).]

See also *n. 5 supra.*

▐ It should be emphasized, however, that the regulation of sign content must be limited to a general distinction between commercial speech as tied to commercial uses permitted in a given zone, and political speech which is and must be permitted everywhere. Specific types of speech or particular messages may not be prohibited. *Consolidated Edison Co. v. New York Public Service Commission,* —— *U.S.* ——, 100 *S.Ct.* 2326, 65 *L.Ed.*2d 319 (1980). See also *Mitchell Family Planning, Inc. v. Royal Oak,* 335 *F.Supp.* 738 (E.D.Mich.1972); *People v. Mobil Oil,* 48 *N.Y.*2d 192, 397 *N.E.*2d 724, *N.Y.S.*2d (1979). However, they may of course be subjected to reasonable restrictions on their time, place and manner.

▐ Limitations on the size of a sign may be imposed if the allowable square footage is not determined in an arbitrary manner. The size limits, if any, must be large enough to permit viewing from the road, both by persons in vehicles and on foot. Inadequate sign dimensions may strongly impair the free flow of protected speech. *Schoen v. Hillside, supra,* 155 *N.J.Super.* at 298. In the context of the Milltown Borough ordinance here, the limitation to six square feet imposed in Section 20–9.1(d)(4) is probably inadequate. See *Baldwin v. Redwood City, supra* (16 square foot limitation on signs does not offend First Amendment); *Ross v. Goshi, supra* (18 square foot limitation upheld).

▐ Other restrictions commonly placed on signs include durational limitations, set-back restrictions and restrictions on the aggregate number of signs permissible on a given piece of property. See, *e. g., Metromedia, Inc. v. San Diego, supra; Ross v. Goshi, supra.* At least one court has held that no duration limitation on the posting of pre-election campaign signs is constitutional. *Orazio v. North Hempstead,* 426 *F.Supp.* 1144 (E.D.N.Y.1977). We are not faced with such restrictions today and specifically decline to determine their constitutionality, emphasizing only that restrictions upon the time, place and manner

of signs must serve a significant government interest and be tied to the uses permitted in that zone.

Affirmed.

*For affirmance* —Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal* —None.