**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3621-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ALBERT FRENCH,

     Defendant-Appellant.

_____

Argued November 1, 2023 – Decided December 13, 2023

Before Judges Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Municipal Appeal. No. 2-A-2021.

Dana Lauren Wefer argued the cause for appellant (Law Offices of Dana Wefer, LLC, attorneys; Dana Lauren Wefer, on the brief).

Joseph B. Paravecchia, First Assistant Hunterdon County Prosecutor, argued the cause for respondent (Renée M. Robeson, Hunterdon County Prosecutor, attorney; Joseph B. Paravecchia, of counsel and on the brief).

PER CURIAM

Defendant Albert French appeals two convictions for violating Executive Order 107 (EO 107)[1] and one conviction for violating N.J.S.A. 39:4-34[2] following municipal court trials and a subsequent de novo review by the Law Division. The convictions arise from April 7 and May 6, 2020 incidents when defendant was stopped by police officers after they observed him walking on the side of a highway in Clinton Township making lewd gestures and holding up signs toward passing motorists during the COVID-19 pandemic.

After careful review of the record and prevailing law, we affirm defendant's conviction for walking with traffic in violation of N.J.S.A. 39:4-34 and reverse both convictions for violations of EO 107.

I.

We discern the following material facts in the record on appeal. The State asserts that defendant was charged by summons with the following offenses

_____

[1] EO 107 was signed by Governor Philip D. Murphy on March 21, 2020 in response to the COVID-19 pandemic. The Order implemented measures to address the public health emergency. Exec. Order No. 107 (Mar. 21, 2020), 52 N.J.R. 554(a) (Apr. 6, 2020).

[2] The Law Division refers to this count as walking with traffic in violation of N.J.S.A. 39:4-34.

stemming from the April 7, 2020 incident: two counts of disorderly conduct in violation of N.J.S.A. 2C:33-2A(2) arising from defendant's alleged shaking of his genitalia from outside his clothing and raising his middle finger toward the police, two counts of disorderly conduct in violation of local ordinance 198-10(c), one count of violating EO 107, and one count of violating N.J.S.A. 39:4-34 for failing to cross within a crosswalk. The summons for the violation of EO 107 pursuant to N.J.S.A. A:9-49(h), marked SC-002985, does not contain any factual basis for the charge.[3]

With regard to the May 6, 2020 incident, defendant was issued summons S-2020-104, which included one charge for disorderly conduct in violation of N.J.S.A. 2C:33-2(a)(2),[4] and violations of EO 107 through N.J.S.A. A:9-49(a) and (g) for walking along the highway holding up signs to passing motorists stating "PHUCK," "#THIN BLUE," and "Slow Down Police Ahead" in non-compliance with the gubernatorial mandate to stay home that was in effect at the time because of the ongoing COVID-19 pandemic.

---

[3] The only summons in the record relating to the April 7 incident alleges a violation of EO 107. The summons charging a violation of N.J.S.A. 39:4-34 is not in the record before us.

[4] This charge is based upon a factual predicate similar to the April 7, 2020 incident.

All of the charges were tried in municipal court through two proceedings held on March 25, 2021.

## II.

The State called police officer William Musacchio[5] of the Clinton Township Police Department to testify as to the April 7, 2020 incident. Musacchio was in a marked police vehicle located in a median cut out of Route 22 when he observed defendant walking westbound in the eastbound lanes carrying a posterboard.

Musacchio was only able to read the first word of the sign that read "p-h-u-c-k," which the officer took as a misspelling of a curse word. As instructed by his superiors, Musacchio contacted the prosecutor's office to discuss a potential violation of EO 107 after watching defendant walk across the highway in an area with no crosswalk. While he was on the telephone with the prosecutor's office, Musacchio observed defendant "grab his genitalia from outside of his clothing" and "shake his genitalia in an up and downward motion" towards the motorists on the highway and then towards him. He then saw defendant "raise his hand and gesture the middle finger to the motoring public."

---

[5] We note that the Law Division decision refers to Officer Musacchio as Officer Masacchio. We use the spelling of the officer's name from the police investigation report.

A-3621-21

Musacchio decided it would be appropriate to take defendant into custody to enforce EO 107 and multiple disorderly conduct charges. Musacchio and an assisting officer found defendant to be irate and emotional.

When the officers informed defendant they were detaining him, he responded that he was "essential." Musacchio understood this to mean defendant was asserting he was an essential worker. Musacchio did not believe defendant but he did not ask defendant whether he was commuting to or from work. During Musacchio's testimony on direct examination, the municipal court judge was presented with video, recorded from the patrol car's dashboard, of the incident on which defendant can be heard asking the officers: "Are you saying I'm not an essential worker?"[6]

Musacchio testified that although defendant was holding up a posterboard sign at the time of the interaction, he did not ask defendant if he was protesting. The officer also testified that if defendant had not raised the posterboard sign, he would have just asked him if he was okay and where he was heading.

The officers told defendant not to leave the scene, but he walked away from them despite the instruction. The officers decided not to pursue him and

---

[6] The video is not part of the record on this appeal. The transcript is inconsistent as to whether defendant used the word "employee" rather than "worker" during this inquiry. This distinction is not essential to our analysis.

instead mailed the summonses for failure to use a crosswalk, violation of EO 107 and various disorderly conduct charges. No other witnesses testified at the trial.

After summations, the municipal court issued an oral decision finding it was undisputed that the April 7, 2020 interaction between Musacchio and defendant occurred while EO 107 was in effect. Further, the court found the State had met its burden of establishing beyond a reasonable doubt that defendant violated EO 107 while on the side of the highway. The court noted that regardless of whether or not the sign defendant was carrying was political, he should not have been on the roadway in light of the restriction imposed under EO 107. Accordingly, the municipal court convicted defendant of violating EO 107 and imposed fines and court costs.[7]

### III.

The municipal court next tried the charges stemming from the May 6, 2020 incident. The State called Sergeant Jeffrey Glennon as the sole witness. Glennon testified that on May 6 around 4:21 p.m., he responded to a report of

---

[7] The court also convicted defendant of disorderly conduct, but that conviction was vacated by the Law Division judge and is not part of this appeal. Defendant was found not guilty of failing to walk in a crosswalk.

6

an individual walking in the roadway. When he arrived at the scene, he saw an individual, later identified as defendant, walking with a sign.

When Glennon approached, he recognized defendant from prior police interactions. Defendant began yelling that he was an essential employee and pointing at the business logo on his sweatshirt. As Glennon attempted to ask defendant some questions, defendant continued to yell he was an essential employee and he had the right to protest. Glennon observed defendant holding a posterboard sign stating in part "PHUCK," "#THIN BLUE," and "Slow Down Police Ahead." Defendant further told Glennon as he was protesting that he "didn't want to be part of [the sergeant's] investigation anymore," he demanded to be freed from detention, and he continued screaming at the officer.

Glennon testified that two additional officers then reported to the scene, and defendant told them he was working. The officers told defendant he could leave the scene, and defendant walked away backwards while raising his middle finger toward them. The officers observed defendant turn around and begin walking in the same direction as traffic. Glennon testified: "When he was walking backwards he's facing the proper way, you have to face traffic. But then once he turned around, he wasn't facing traffic, he was walking with traffic."

A-3621-21

Eventually, defendant got into a vehicle and drove away. Glennon subsequently confirmed with defendant's employer that he had worked in the afternoon and left his job about twenty minutes before the police interaction. Glennon testified that after consulting with the prosecutor's office he mailed defendant summonses for violation of EO 107, disorderly conduct and walking in the roadway.

After summations from counsel, the municipal court issued an oral decision. The court found it was beyond dispute that the May 6, 2020 incident occurred while EO 107 was in effect. The municipal court found that defendant had not presented evidence to support his argument that he was returning from work at the time of the encounter with police. The municipal court convicted defendant of violating EO 107 and the statute prohibiting walking in the same direction as traffic. Defendant was not convicted of the remaining charges.

IV.

Defendant appealed to the Law Division, contending that the State's proofs at both trials were insufficient to sustain the convictions. Defendant further argued that he did not violate EO 107 since he was engaged in activities permitted under EO 107 including walking, traveling home from work, and participating in political speech.

On June 15, 2022, the Law Division reviewed the municipal court convictions de novo. The court deferred to the credibility determinations made by the municipal court judge. See State v. Kuropchak, 221 N.J. 368, 382 (2015). The Law Division upheld the two convictions for violating EO 107 on April 7 and May 6, 2020, and the conviction of walking with traffic.

The Law Division's written decision states because "[t]here is little case law or precedent concerning convictions based on violations" of EO 107, "the court must rely primarily on the plain text of the order, as well as the text of the applicable sections (g) and (h)" of N.J.S.A. A:9-49. The Law Division ruled defendant had "an explicit obligation to cooperate with law enforcement in connection with any allowed activities. He did not do so, and in not doing so, he violated a rule adopted and promulgated by the [G]overnor."

Although the Law Division found defendant was walking outdoors alone and protesting on the side of the road, it concluded he was not engaged in "traditional recreational activity" and stated:

> [Defendant] was protesting on the side of the road—he was engaged in a high-conflict activity with a much greater chance of resulting in interpersonal activity than jogging around one's neighborhood or taking a solitary walk. . .
>
> . . . .

The court finds that while [defendant] was outside, he was not engaged in the sort of outdoor recreational activity contemplated by a broad interpretation of [EO] 107 and in consideration of the purpose behind that order.

The Law Division also concluded the officers' testimony and the presence of the signs bearing profanity "weigh[ed] against the possibility that [defendant] was returning from work." The Law Division judge stated:

[E]ven if he was returning from work, there can be no doubt that under the order, essential employees could leave their residences to go to work, and to go home from work, not to leave work, engage in a disallowed activity for a period of time and then continue on the way home.

The Law Division judge made the factual finding that defendant was protesting on April 7, 2020 and concluded this could be a form of political activity. However, the judge stated:

[W]hen read with the purpose of the act in mind, it is clear that individuals were to leave their residences, perform the . . . political purpose of their leaving in as efficient and socially distanced a manner as possible, and then go home. [Voting, for example, would] fall under this type of exception. Instead, [defendant] engaged in a public high-conflict activity of an indefinite [duration,] an activity which unlike voting could have waited until the threat of emergency had subsided.

As to the May 6, 2020 police interaction, the court concluded EO 107 "allows for individuals to engage in outdoor recreational activity while following best social distancing practices." However, the Law Division found defendant was not engaged in such outdoor recreational activity because "[h]e was in an unusual place. He was standing on the immediate shoulder of the road, very close to where cars would be driving, during a time of emergency."

The Law Division concluded defendant "demonstrated an utter unwillingness to cooperate with the officer[s] or even to engage in reasoned conversation with them. He was hostile and combative towards the officers who were carrying out their lawful duties during a time of emergency." Further, the Law Division found that defendant was not engaged in political activity and concluded defendant was not returning home from work. The Law Division stated "walking backwards while holding a sign is simply not a part of commuting to and from work in an efficient and socially distant manner."

The Law Division also upheld the conviction under N.J.S.A. 39:4-34 for improper walking in the roadway on May 6, 2020. The court found defendant walked on the far right of the highway when the statute requires an individual to walk on the "extreme left." The Law Division found Glennon's testimony that

11

he observed defendant turn around and walk in the direction of traffic was undisputed.

On July 28, 2022, defendant appealed from the Law Division's order.

## V.

Defendant raises the following contentions on appeal:

> POINT I:
> DEFENDANT'S CONDUCT WAS NOT A VIOLATION OF EXECUTIVE ORDER 107
>
> POINT II:
> THE SUPERIOR COURT'S INTERPRETATION OF EO 107 RENDERS THE EXECUTIVE ORDER UNCONSTITUTIONALLY VAGUE UNDER THE FOURTEENTH AMENDMENT
>
> > A. The Superior Court's Interpretation of EO 107 Renders the Executive Order Unconstitutionally Vague Under the Fourteenth Amendment.
> >
> > B. As Applied, EO 107 and Disaster Control Act Impinge on Defendant's First Amendment Right to Protest.
> >
> > C. As Applied, EO 107 and Disaster Control Act Unconstitutionally Infringed on Defendant's Right to Freedom of Movement and Fourth Amendment Rights Because the State Lacked Reasonable Suspicion or Probable Cause to Stop and Detain Defendant.

12                                    A-3621-21

D. Defendant's Speech After Being Stopped and Detained by the Police is Protected Speech that Cannot Be Used as a Basis upon Which to Convict Him.

POINT III:
AS APPLIED, THE EXECUTIVE ORDER AND DISASTER CONTROL ACT IMPINGE ON [DEFENDANT'S] FIRST AMENDMENT RIGHT TO PROTEST

POINT IV:
AS APPLIED, THE EXECUTIVE ORDER AND DISASTER CONTROL ACT UNCONSTITUTIONALLY INFRINGED ON [DEFENDANT'S] RIGHT TO FREEDOM OF MOVEMENT AND FOURTH AMENDMENT RIGHTS BECAUSE THE STATE LACKED REASONABLE SUSPICION OR PROBABLE CAUSE TO STOP AND DETAIN [DEFENDANT]

POINT V:
THE COURT IMPERMISSIBLY SHIFTED THE BURDEN TO DEFENDANT TO PROVE HE WAS OUT FOR A REASON PERMITTED UNDER EO 107

POINT VI:
[DEFENDANT'S] SPEECH AFTER BEING STOPPED AND DETAINED BY THE POLICE IS PROTECTED SPEECH THAT CANNOT BE USED A BASIS UPON WHICH TO CONVICT HIM

POINT VII:
THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SHOW THAT DEFENDANT WALKED THE WRONG WAY ON THE HIGHWAY AND THE COURT ERRED IN ITS INTERPRETATION OF THE STATUTE AT ISSUE

13

## VI.

Appellate review "focuses on whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). "[A]ppellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Locurto, 157 N.J. 463, 474 (1999).

Legal determinations by the Law Division and municipal court, however, are considered de novo. Robertson, 228 N.J. at 148. We review the interpretation and application of gubernatorial executive orders de novo. Talmadge Vill. LLC v. Wilson, 468 N.J. Super. 514, 517 (App. Div. 2021) (instructing the courts to "interpret the meaning of a valid executive order de novo").

## VII.

We first consider defendant's convictions for violating EO 107 on April 7 and May 6, 2020. Defendant argues that at the time of both incidents he was engaged in conduct that is exempted under EO 107, including walking, political activity, and commuting from his job.

"The Governor is authorized to issue executive orders, [as] 'a well-accepted tool of gubernatorial action.'" Kravitz v. Murphy, 468 N.J. Super. 592, 610 (App. Div. 2021) (quoting Perth Amboy Bd. of Educ. v. Christie, 413 N.J. Super. 590, 598-99 (App. Div. 2010)). On March 21, 2020, Governor Murphy issued EO 107 "in response to [the] health-related emergenc[y] caused by the spread of the COVID-19 coronavirus." JWC Fitness, LLC v. Murphy, 469 N.J. Super. 414, 419 (App. Div. 2021).

In interpreting the meaning and scope of EO 107, we consider the "plain language, and if we find the language ambiguous we consider the legislative history and purpose of the enactments." State v. Toussaint, 440 N.J. Super. 526, 530 (App. Div. 2015); see also Rozenblit v. Lyles, 245 N.J. 105, 121 (2021). "To that end, we first consider the statutory language. Where words are not given specified meanings within the statute, we afford those words their ordinary meanings, viewed in context of the legislation as a whole." JWC Fitness, LLC, 469 N.J. Super. at 425 (internal citation omitted); see N.J.S.A. 1:1-1. "In this way, we must construe the statute sensibly and consistent with the objectives that the Legislature sought to achieve." Nicholas v. Mynster, 213 N.J. 463, 480 (2013).

EO 107 states in part as follows:[8]

> 2. All New Jersey residents shall remain home or at their place of residence unless they are . . . 5) reporting to, or performing, their job; 6) walking, running, operating a wheelchair, or engaging in outdoor activities with immediate family members, caretakers, household members, or romantic partners while following best social distancing practices with other individuals, including staying six feet apart; 7) leaving the home for an educational, religious, or political reason . . . .

> 3. When in public, individuals must practice social distancing and stay six feet apart whenever practicable, excluding immediate family members, caretakers, household members, or romantic partners.

> . . . .

> 24. It shall be the duty of every person or entity in this State or doing business in this State and of the members of the governing body and every official, employee, or agent of every political subdivision in this State and of each member of all other governmental bodies, agencies, and authorities in this State of any nature whatsoever, to cooperate fully in all matters concerning this Executive Order.

> [Exec. Order No. 107 (Mar. 21, 2020), 52 N.J.R. 554(a) (Apr. 6, 2020).]

---

[8] On June 9, 2020, paragraph two of EO 107, as relevant to this matter, was rescinded by the issuance of paragraph eleven in EO 153. Exec. Order No. 153 (June 9, 2020), 52 N.J.R. 1303(a) (July 6, 2020).

N.J.S.A. A:9-49(g) and (h) require cooperation with emergency orders and deem the failure to do so a disorderly persons offense.

At an April 4, 2020 press briefing, the Governor was asked specifically about the ability to protest under EO 107. He responded: "[D]on't protest as a group. We respect folks who want to protest, find some other way to do it virtually online, whatever it might be." (Gov. Phil Murphy, Transcript: Coronavirus Briefing Media (April 7, 2020), https://nj.gov/governor/news/news/562020/approved/20200407f.shtml).

The Governor further clarified his position regarding protests under the relevant executive orders at a press briefing on April 29, 2020:

> People have a right to protest. I wish they would do it from home . . . . The thing that really bothered me was they were congregating, and they weren't wearing masks for the most part and they were on top of each other and that's what led to the [violation of the executive order] . . . . I wish folks would protest from home and virtually, but if they're going to protest we're [going to] be tough on enforcing the . . . no congregation.
>
> [Gov. Phil Murphy, Transcript: Coronavirus Briefing Media (April 29, 2020), https://nj.gov/governor/news/news/562020/approved/20200429d.shtml.]

During oral argument on this appeal, we asked the parties if any subsequent guidance on prosecuting violations of EO 107 had been issued. The

17

State submitted a letter pursuant to <u>Rule</u> 2:6-11(d)(1) acknowledging a June 17, 2020 memorandum from the State of New Jersey Attorney General entitled "Guidance Regarding Municipal Prosecutors' Discretion in Prosecuting COVID-19 Related Offenses" (the Attorney General Memorandum). Att'y Gen., Guidance Regarding Municipal Prosecutors' Discretion in Prosecuting COVID-19 Related Offenses (June 17, 2020).

The Attorney General Memorandum provides instruction on how and when to prosecute COVID-19-related charges in municipal courts. Among other provisions, the Memorandum directs:

> Unlike most complaints filed in municipal court, COVID-19 related charges are only pursued after a review of available facts by the COVID-19 Prosecutor and with the COVID-19 Prosecutor's authorization to proceed with the charge. Indeed, without approval by the COVID-19 Prosecutor, COVID-19 related charges should not be filed.
>
>    . . . .
>
> To ensure that all outdoor political activities and outdoor worship services receive uniform treatment, I am directing prosecutors to move to dismiss any Executive Order violations previously filed for such conduct, despite the initial probable cause determination or appropriateness of the violation at the time it was issued. Based on data maintained by the Division of Criminal Justice, there were five individuals who received summonses for organizing outdoor political protests and religious services in

18

violation of Orders prior to the issuance of Executive Order No. 152;[9] no individual protestors or worshipers have been cited to date.

[Att'y Gen., Guidance Regarding Municipal Prosecutors' Discretion in Prosecuting COVID-19 Related Offenses (June 17, 2020).]

Notably, the Attorney General Memorandum directs prosecutors to dismiss any pending charges for "outdoor political activities." The Law Division made the factual finding that at the time of both incidents defendant was protesting. We agree with the Law Division's conclusion that defendant was protesting by holding up posterboards expressing speech for motorists to see.

We further conclude that defendant's protesting constitutes political activity for the purposes of EO 107 and the Attorney General Memorandum. "Political expression obviously includes any fair comment on any matter of public interest, whether or not the subject of an election campaign, whether or not embarrassing to the local governing body, and whether or not irritating to one's neighbors." State v. Miller, 162 N.J. Super. 333, 338 (App. Div. 1978), aff'd 83 N.J. 402 (1980); see Ruthenbeck v. First Crim. Jud. Dist. Court, 7 N.J.

_____

9  EO 152 issued new guidance on group gatherings but did not supersede the portions of EO 107 relevant to this case. Exec. Order. No. 152 (June 9, 2020), 52 N.J.R. 1301(a) (July 6, 2020).

Misc. 969, 969-70 (1929) (in which our Supreme Court vacated a conviction where the defendant said "you big muttonhead, do you think you are a czar around here?" in a loud and offensive tone to a police officer); see also Miller, 83 N.J. at 411 (finding that when the "message on the defendant's sign concerned a matter of public interest . . . it is political speech and occupies a preferred position in our system of constitutionally-protected interests").

Based upon our careful review of the facts in the record and prevailing law, we conclude defendant's conduct on both April 7 and May 6, 2020 constitutes "outdoor political activity" and that the charges for violation of EO 107 were required to be dismissed under the Attorney General Memorandum. See Fraternal Ord. of Police, Newark Lodge No. 12 v. City of Newark, 244 N.J. 75, 100-01 (2020) (finding that Attorney General directives require prosecutors and all other law enforcement officers to "cooperate with, and aid, the Attorney General" and while "[i]ndividual law enforcement agencies have some discretion in how to fulfill" certain mandates, the policies put forth by the Attorney General "are mandatory"). It is undisputed that on April 7 and May 6, 2020, defendant had one or more posterboard signs he was displaying to passing traffic.

The officers' testified that both posters contained the word "phuck" and at least one sign contained a message regarding law enforcement. We conclude that defendant's display of the signs to passing motorists on both occasions was a form of political expression, constituting "outdoor political activity," exempted from EO 107 and precluded from prosecution under the Attorney General Memorandum and the First Amendment.

The State argues that "neither the Clinton Township Police Department nor the Hunterdon County Prosecutor's Office violated the [Attorney General] Guideline during their investigation and prosecution of defendant's violations of Executive Order No. 107." We disagree. The EO 107-related charges stemming from the April 7 and May 6, 2020 events were pending at the time the Attorney General Memorandum was issued on June 17, 2020. The Attorney General Memorandum mandated dismissal of all then-pending charges for violations of EO 107 based upon outdoor political activities.

The State also argues that the Law Division properly found that defendant's non-compliance with the responding officers is a separate violation of EO 107 which is not subject to the enumerated exceptions. Thus, the State contends the conviction should be sustained on non-compliance grounds that are not covered under the Attorney General Memorandum. But, in a criminal

21

matter, the State cannot change the theory of the prosecution on appeal. The investigation report filed by Musacchio as to the April 7, 2020 incident clearly evidences the assistant prosecutor authorized charging defendant with violating EO 107 before an officer approached defendant. Accordingly, the decision to charge defendant under EO 107 was made before defendant became non-compliant.

Nor did the State submit at prior proceedings that defendant was guilty of an EO 107 violation because he was non-compliant with officers' instructions. In any event, we conclude that on both occasions, defendant's uncooperative behavior was inextricably intertwined with his outdoor political activity. We therefore conclude the Attorney General Memorandum applies and the charges against defendant for violation of EO 107 should have been dismissed.

We instruct the trial court on remand to vacate the convictions for the two EO 107 violations consistent with this opinion. We need not address defendant's constitutional objections to EO 107 since all of the violations stemming from it are vacated. See State in Int. of A.R., 234 N.J. 82, 97 (2018) ("We have often stated, '[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation.'" (alteration in original) (quoting Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80 (2006)).

We turn next to defendant's argument there is insufficient evidence to sustain a conviction for walking in the direction of traffic under N.J.S.A. 39:4-34. That statute provides: "On all highways where there are no sidewalks or paths provided for pedestrian use, pedestrians shall, when practicable, walk only on the extreme left side of the roadway or its shoulder facing approaching traffic."

Defendant argues there was no evidence in the record as to when he turned so that he was no longer facing oncoming traffic and, therefore, the statutory violation was not established beyond a reasonable doubt. Conversely, the State contends the court's credibility and factual findings should not be disturbed because they are supported by the record.

We defer to the Law Division's factual findings as to Officer Glennon's testimony. Glennon testified that he observed defendant walking with traffic in violation of the statute. Although no video evidence capturing this portion of the encounter was introduced, the municipal court judge accredited Glennon's testimony, finding:

> Clearly, while the defendant was walking backwards at one point, he should have been on the other side of the roadway. When he turned around, he was in violation of the pedestrian statute. Again, this is not a [S]upreme

23

[C]ourt matter, but the court finds the defendant guilty of that particular violation. . . .

The Law Division upheld the municipal court's conclusion, holding that: "Given the municipal court's credibility findings, the deference that they deserve, and based on the totality of the evidence this court finds that the appellant is guilty of walking with traffic."

Defendant argues that there is "significant confusion" surrounding this conviction and contends he was never charged with a violation of walking with traffic and the record does not include a summons for violating N.J.S.A. 39:4-34. Defendant did not argue in prior proceedings that he did not receive notice of the N.J.S.A. 39:4-34 charge and thus failed to preserve that argument for purposes of this appeal.[10] R. 2:10-2.

Similarly, defendant did not argue at the municipal court trials that both pedestrian stops violated the Fourth Amendment and that police also violated his fundamental right to travel. Defendant never made a motion to suppress evidence pursuant to Rule 7:5-2, which requires that "[a]ll motions to suppress shall be heard before the start of the trial."

---

[10] Additionally, the record on defendant's appeal is incomplete as to the totality of the summonses and the specific charges levied against defendant.

To the extent we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2). Affirmed in part, reversed in part, and remanded for an entry of judgment consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION