THOMAS DOLECKY, PLAINTIFF, v. BOROUGH OF RIVERTON, DEFENDANT.

Superior Court of New Jersey
Law Division Burlington County

Decided June 1, 1987.

*Ronald J. Cappuccio* for plaintiff.

*Joseph S. Georgiana* for defendant (*Capehart & Scatchard,* Attorney).

HAINES, A.J.S.C.

Thomas Dolecky's home is situated on the Delaware River in Riverton, New Jersey. Bank Avenue, a private road, runs through it at a point approximately 50 ft. from the edge of the river. A grassy area between Bank Avenue and the river, owned by Dolecky, has become a haven for members of the public whose frolics there have become annoying. Dolecky complains of littering and rowdy, disruptive, loud and unpleasant behavior.

Riverton claims that the public has a prescriptive right of peaceful access to the river over plaintiff's property as the result of adverse use for a period of more than 100 years. Dolecky does not challenge this assertion for the purposes of the present application although it may require a trial. He points out, however, that other uses to which the public is putting his property are not permitted under any theory or factual contention advanced by the Borough.

Dolecky has placed two 12″ × 24″ wooden signs on the riverfront portion of his property, each of which states: "PRIVATE PROPERTY—NO TRESPASSING." Riverton's zoning ordinance permits signs in Dolecky's zone only as follows:

A. For accessory residential uses, one sign or nameplate showing only the name and profession or occupation of the user. Such sign shall not exceed two (2) square feet in area.

B. For all permitted uses, not more than two (2) temporary signs, neither of which shall exceed nine (9) square feet in area on the premises pertaining to the construction, lease, rent or sale of a building or premises; and a name plate or bulletin board not exceeding twenty (20) square feet, at the entrance to a church, an educational building or similar institution.

Dolecky's signs violate these provisions and the Riverton zoning officer has filed a complaint against him so charging. He has responded by filing a complaint in lieu of prerogative writ in this court seeking to enjoin the enforcement of the ordinance and has obtained an order temporarily providing that relief. This opinion, written after consideration of briefs and oral argument, makes that injunction permanent.

## A. *The Trespass Statute*

One who goes upon private property with notice and without permission is a petty disorderly person. *N.J.S.A.* 2C:18–3b, provides:

A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(1) Actual communication to the actor; or

(2) Posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or

(3) Fencing or other enclosure manifestly designed to exclude intruders.

This statute was discussed in *State v. Pierce*, 175 *N.J.Super.* 149 (Law Div.1980), which sets forth the history of New Jersey's trespass laws and notes:

This law [L.1895, c. 148, sec. 3] and all subsequent trespass laws have in common a notice requirement. There must have been conspicuously posted notices on the land forbidding trespassing, or personal notice to the defendant forbidding him trespassing. This notice against *intrusion* onto real property is a substantive element of the offense. [at 153]

Dolecky, like any other owner of private property, has a right to file a complaint in the Riverton Municipal Court charging trespassers with the offense described in the statute. He cannot do so successfully, however, unless in compliance with the statute, he makes "an actual communication" to the trespasser, or posts his property or fences his property. The Riverton ordinance does not permit fences. It does not permit "posting" by reason of its sign restrictions. Any effort by Dolecky to enforce the trespass law is therefore restricted to those occasions when he has made an actual communication warning off the trespasser. This is very limiting. It provides him with no trespass remedy if he does not see the intruder, saddles him with the necessity of policing his own property in person or by agent and places him at risk when he is obliged to speak to aggressive, belligerent or dangerous trespassers.

Riverton's zoning ordinance is authorized by the Municipal Land Use Law, *N.J.S.A.* 40:55D, adopted in 1975, effective August 1, 1976. *N.J.S.A.* 2C:18–3, the trespass statute, was adopted in 1978, becoming effective on September 1, 1979. It was amended in 1980. In addition to the implication of supersession arising from the later passage of *N.J.S.A.* 2C:18–3, nothing in the zoning statute or the trespass statute authorizes the emasculation of the latter by an ordinance adopted pursuant the former. Our criminal laws would be subject to capricious treatment if they could be qualified by the disparate legislative actions of various municipalities. Elementary logic requires the conclusion that Riverton's ordinance, insofar as it interferes with the operation of the trespass statute, is unlawful and unenforceable.

## B. *Freedom of Speech*

The First Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law ... abridging the freedom of speech...." The New Jersey Constitution (1947), Art. 1, par. 6, provides that "Every person may freely speak,

write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press." Riverton's ordinance violates these guarantees.

■ Signs are communications entitled to the same free speech protections accorded verbal expression. *Linmark Assoc. v. Willingboro,* 431 *U.S.* 85, 97 *S.Ct.* 1614, 52 *L.Ed.*2d 155 (1977); *State v. Miller,* 83 *N.J.* 402 (1980). Political speech occupies "a preferred position in our system of constitutionally-protected interests." *Miller,* 83 *N.J.* at 411, citing *Murdock v. Pennsylvania,* 319 *U.S.* 105, 63 *S.Ct.* 870, 87 *L.Ed.* 1292 (1943). It is entitled to the broadest First Amendment protection. *Buckley v. Valeo,* 424 *U.S.* 1, 96 *S.Ct.* 612, 46 *L.Ed.*2d 659 (1976). Government regulations may prevail over that Amendment only by the showing of a compelling subordinating interest. *Boston v. Bellotti,* 435 *U.S.* 765, 98 *S.Ct.* 1407, 55 *L.Ed.*2d 707 (1978).

*Miller* involved a homeowner who placed an 4' × 8' sign on his property advising prospective residents that the neighborhood was a "flood hazard area." Like Dolecky, he was charged with violating the local zoning ordinance which prohibited such signs. The Court held that the sign concerned a matter of public interest and was political speech impermissibly restricted by the ordinance. In agreeing with the Appellate Division's statement in the same case, it said:

> Political expression obviously includes any fair comment on any matter of public interest, whether or not the subject of an election campaign, whether or not embarrassing to the local governing body, and whether or not irritating to one's neighbors. [at 411]

Our cases often divide speech into two categories: political and commercial. Commercial speech, which is "expression related solely to the economic interest of the speaker and its audience," is entitled to First Amendment protection but to a lesser extent than political speech. *Virginia Pharmacy Board v. Virginia Citizens Consumer Council,* 425 *U.S.* 748, 96 *S.Ct.* 1817, 48 *L.Ed.*2d 346 (1976). The test applied to government

restrictions upon commercial speech is set forth in *Central Hudson Gas v. Public Service Commission*, 447 *U.S.* 557, 100 *S.Ct.* 2343, 65 *L.Ed.*2d 341 (1980):

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading.[1] Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest. [at 566, 100 *S.Ct.* at 2351]

■ Arguably, Dolecky's sign is fair comment on a matter of public interest. The public, assuming it has a prescriptive right of access to the river, may use the plaintiff's property for that purpose, but for no other. It appears that the public is using the property for other purposes. It is interested in knowing the extent of its right. Further, the Legislature, by adopting the disorderly conduct statute prohibiting trespassing with notice, has created a public interest in the posting of property for notice purposes. Dolecky's signs further that public interest. For these reasons they constitute political expression strongly protected by our guarantees of free speech.

The signs also relate to Dolecky's economic interests. They are designed to protect his private property from intruders. It is claimed that the public, through repetitious intrusions over 100 years, has acquired a prescriptive right to use his property for access to the river. Dolecky does not wish to have any public rights expanded through further repetitious intrusions. The value of his property is affected by the uses to which it may be put and by the fact that intruders may or may not be regulated. Dolecky's economic interests are clearly at stake. His signs therefore contain commercial speech.

This political-commercial analysis is not entirely comfortable. The signs are not so easily categorized. A "No Trespassing"

---

[1] Note that Dolecky's signs are probably misleading if the public has the right to use his property for access to the river. They may be read as denying all access to the property.

statement is not one that most would interpret as "political." And the same statement, having nothing to do with advertising or selling, doesn't sound "commercial" in any usual sense. The commercial distinction has been questioned by the United States Supreme Court In *Linmark*, the Court said:

> In *Bigelow v. Virginia*, 421 *U.S.* 809, 95 *S.Ct.* 2222, 44 *L.Ed.*2d 600 (1975), decided less than two years ago, this Court for the first time expressed its dissatisfaction with the then-prevalent approach of resolving a class of First Amendment claims simply by categorizing the speech as "commercial." *Id.*, at 826, 95 *S.Ct.* at 2235. "Regardless of the particular label," we stated, "a court may not escape the task of assessing the First Amendment interest at stake and weighing it against the public interest allegedly served by the regulation." *Ibid.*

. . . .

> One year later, in *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council*, 425 *U.S.* 748, 96 *S.Ct.* 1817, 48 *L.Ed.*2d 346 (1976), we went further. Conceding that "[s]ome fragment of hope for the continuing validity of a 'commercial speech' exception arguably might have persisted because of the subject matter of the advertisement in *Bigelow*," *id.*, at 760, 96 *S.Ct.*, at 1825, we held quite simply, that commercial speech is not "wholly outside the protection of the First Amendment," *id.*, at 761, 96 *S.Ct.*, at 1805. Although recognizing that "[s]ome forms of commercial speech regulation"—such as regulation of false or misleading speech—"are surely permissible," *id.*, at 770, 96 *S.Ct.*, at 1830, we had little difficulty in finding that Virginia's ban on the advertising of prescription drug prices by pharmacists was unconstitutional. [at 91–92, 97 *S.Ct.* at 1617–18]

There is no need to categorize Dolecky's "No Trespassing" signs for free speech purposes. The cases do not treat free speech so narrowly. First Amendment protection has been provided in numerous cases dealing with varied forms of non-political speech. In *Abood v. Detroit Bd. of Ed.*, 431 *U.S.* 209, 232, 97 *S.Ct.* 1782, 1798, 52 *L.Ed.*2d 261 (1977), the Court said that whether or not the speech is "political" does not constitute a "critical constitutional inquiry." In *United Mine Workers v. Illinois Bar Ass'n.*, 389 *U.S.* 217, 223, 88 *S.Ct.* 353, 356–57, 19 *L.Ed.*2d 426 (1967), it said the "First Amendment does not protect speech and assembly only to the extent it can be characterized as political . . . free speech and free press are not

confined to any field of human interest." Cases are collected in *Nimmer, Freedom of Speech* (1984) Sec. 3.01. *Nimmer* says:

> Any doubt that the Supreme Court regards nonpolitical speech as protected under the First Amendment is dissipated when one notes those decisions which uphold First Amendment rights in commercial speech, labor communications, religious speech, entertainment, profanity uttered in a non-political context, and even obscenity in certain limited circumstances, as well as speech advocating or upholding the propriety of adultery. [at 3–4 and 3–5]

■ Dolecky's signs protect his right of privacy, his right to live in his home free from the unwanted intrusions of others. In *Maine v. Tauvar*, 461 *A.2d* 1065, 1067 (Me.Sup.Jud.Ct.1983), the court said: "... with regard to private property not open to the general public, the owner may lawfully order a person to leave even though the entry was authorized and peaceful." In *Brush v. Penn State Univ.*, 489 *Pa.* 243, 414 *A.2d* 48 (1980), the Court approved regulations and (at least inferentially) the use of "no trespassing" signs protecting the privacy interest of students living in dormitories. *Linmark* gave "For Sale" signs First Amendment protection, in part, because they related to a permissible use of private residential property. The same may be said of the signs here. They permit Dolecky's enforcement of our trespass statute and protect the value and ownership of his home. They are "speech," however characterized, entitled to the guarantee of the First Amendment and the New Jersey Constitution.

■ Those guarantees invalidate Riverton's zoning ordinance, insofar as it affects Dolecky's signs, unless the ordinance (1) regulates only time, place and manner, as opposed to content, or (2) advances a governmental interest so vital that freedom of speech is subordinate. *Linmark; Central Hudson Gas.* Obviously, it does neither. The ordinance absolutely prohibits "No Trespassing" signs in Dolecky's residential zone; it makes no reference to time, place or manner. Were the contrary true, it could not survive. *Miller* holds that "... a regulation restricting the time, place and manner of speech will survive constitutional scrutiny only if it (1) can be justified without reference to the content of the regulated speech; (2)

serves a significant government interest, and (3) leaves open ample alternative channels for the communication of the information." 83 *N.J.* at 412. Riverton's ordinance concerns and restricts sign content and cannot be shown to have any adequate justification without reference to content. Our State, by adopting its trespass statute, has established a governmental interest in the use of "No Trespassing" signs to provide notice thereby making any interest Riverton may have in regulating the use of such signs for aesthetic purposes (permissible under *Miller*) or otherwise clearly subordinate and not the opposite. The ordinance therefore serves no significant governmental interest of the municipality. Finally, since "No Trespassing" signs provide the only practical way to give the notice essential to enforcement of the trespass statute, the ordinance fails to "leave open ample alternative channels" for communication.

## CONCLUSION

Plaintiff is entitled to an injunction permanently restraining the enforcement of the Riverton ordinance insofar as it affects his signs. In reaching this conclusion, the court does not decide (1) whether the public has any prescriptive right to the use of the Dolecky property or (2) whether the signs improperly restrict any legitimate public use of the property or the consequences of any such restriction.