

FILED
Oct 16 2015, 7:00 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEY FOR APPELLEE TRACY BONAM |
|---|---|
| Julia Blackwell Gelinas<br>Maggie L. Smith<br>Frost Brown Todd LLC<br>Indianapolis, Indiana | Glen E. Koch II<br>Boren, Oliver & Coffey, LLP<br>Martinsville, Indiana |
| Michael A. Ksenak<br>Martinsville, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John A. Fox,<br>*Appellant-Respondent,*<br><br>v.<br><br>Tracy Bonam and Doug Bonam,<br>*Appellees-Petitioners* | October 16, 2015<br><br>Court of Appeals Case No.<br>55A01-1503-PO-112<br><br>Appeal from the Morgan Superior Court<br><br>The Honorable G. Thomas Gray, Senior Judge<br><br>Trial Court Cause No.<br>55D01-1312-PO-2193 |

**Crone, Judge.**

## Case Summary

[1]     Soon after Tracy and Doug Bonam moved next door to John and Mary Fox, their neighborly relationship soured. John obtained protective orders against the Bonams, and the Bonams petitioned for a protective order against John

based on allegations of stalking. After a hearing, the trial court concluded that John committed stalking against Tracy and issued a protective order that includes restrictions involving his motorcycle, motorized tools, and firearms. John now appeals, contending that the protective order should be dismissed because he did not commit stalking and that the above restrictions are impermissible. We hold that the trial court did not err in concluding that John committed stalking but that it did err in imposing the restrictions. Therefore, we affirm the protective order in part and vacate those restrictions.

## Facts and Procedural History

[2] The Bonams moved next door to the Foxes in 2011. Their neighborly relationship was initially cordial but deteriorated after a dispute over a rosebush near their property line. In November 2013, John petitioned for protective orders against the Bonams, which the trial court issued ex parte. In December 2013, the Bonams petitioned for a protective order against John, alleging that they had been victims of stalking based on incidents discussed below.

[3] Because of continuances by the parties and the trial court, a consolidated hearing on the petitions was not held until January 2015. During the hearing, John testified that he owned numerous firearms. The trial court made oral findings at the conclusion of the hearing and then issued a written order. The court continued John's protective order against Tracy until December 2015, dismissed John's protective order against Doug, and did not issue a protective order in favor of Doug. The court concluded that John committed stalking against Tracy and issued a protective order that enjoins John from "threatening

to commit or committing acts of stalking against [Tracy]" and "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with [her]" until January 2017. Appellant's App. at 7. The order contains additional restrictions, including that John not start his motorcycle or do any yard work with a motorized tool before 8:30 a.m. and that he surrender his firearms to the county sheriff.

John filed a motion to correct error, which the trial court denied. John appealed and filed a motion to stay enforcement of the protective order.[1] The motions panel of this Court granted the motion in part and ordered the immediate return of John's firearms. Additional facts will be provided below.

## Discussion and Decision

## Section 1 – The trial court did not err in concluding that John committed stalking against Tracy.

John appeals from the denial of his motion to correct error. "We generally review the denial of a motion to correct error for an abuse of discretion." *Peoples State Bank v. Benton Twp. of Monroe Cnty.*, 28 N.E.3d 317, 321 (Ind. Ct. App. 2015). "An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Id.* (citation omitted).

---

[1] The Bonams do not appeal the trial court's rulings. Doug is not involved in this appeal, but pursuant to Indiana Appellate Rule 17(A) a party of record in the trial court shall be a party on appeal.

Our legislature has indicated that the Indiana Civil Protection Order Act shall be construed to promote the protection and safety of all victims of domestic violence "in a fair, prompt, and effective manner" and the prevention of future domestic violence. Ind. Code § 34-26-5-1. Pursuant to Indiana Code Section 34-6-2-34.5, domestic violence includes stalking as defined by Indiana Code Section 35-45-10-1: "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." "The term does not include statutorily or constitutionally protected activity." *Id*. Indiana Code Section 35-45-10-2 defines harassment as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Impermissible contact "includes but is not limited to knowingly or intentionally following or pursuing the victim." Ind. Code § 35-45-10-3. "Harassment does not include statutorily or constitutionally protected activity[.]" Ind. Code § 35-45-10-2.

A person who has been a victim of domestic violence may file a petition for a protective order against a person who has committed stalking against the petitioner. Ind. Code § 34-26-5-2(a). A finding that domestic violence has occurred sufficient to justify the issuance of a protective order "means that a respondent represents a credible threat to the safety of a petitioner or a member

of the petitioner's household." Ind. Code § 34-26-5-9(f). Upon a showing of domestic violence "by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence." *Id.*[2] A protective order is effective for two years after the date of issuance unless another date is ordered by the court. Ind. Code § 34-26-5-9(e).

[8] Protective orders are similar to injunctions, and therefore in granting an order the trial court must sua sponte make special findings of fact and conclusions thereon. *Hanauer v. Hanauer*, 981 N.E.2d 147, 148 (Ind. Ct. App. 2013) (citing, inter alia, Ind. Trial Rule 52(A) and Ind. Code § 34-26-5-9(a), -(f)). We apply a two-tiered standard of review: we first determine whether the evidence supports the findings, and then we determine whether the findings support the order. *Id*. at 149. In deference to the trial court's proximity to the issues, we disturb the order only where there is no evidence supporting the findings or the findings fail to support the order. *Koch Dev. Corp. v. Koch*, 996 N.E.2d 358, 369 (Ind. Ct. App. 2013), *trans. denied* (2014). We do not reweigh evidence or reassess witness credibility, and we consider only the evidence favorable to the trial court's order. *Id*. The party appealing the order must establish that the findings are clearly erroneous. *Id*. "Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them *de novo*."

---

[2] In its oral findings, the trial court cited a clear and convincing evidence standard. In its written order, the court cited the preponderance standard.

*Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011) (citation omitted), *trans. denied*.

[9] The trial court concluded that John committed stalking against Tracy based on five separate allegations that it found to be true. We note that the court did not specifically find that John committed stalking based on any single allegation. We address the allegations as they are numbered in Tracy's petition.

### Allegation 1

[10] Tracy alleged that in the winter of 2012, John

> set up bulls eye targets approximately [eight to ten feet] from the property line purposely facing them towards the Bonam residence. Further, [John] stuck a sign close to the property line on a stake directing [sic] facing the Bonam's [sic], such sign reading: "Warning! Is there life after death? Trespass here and find out." The sign also contained a gun pointing towards the viewer, with a fist wrapped around the gun. This was placed in an effort to stalk, intimidate, and harass the Bonam's [sic]. Also at various times since Winter 2012, when [John] was working in his yard, he will take the targets from his garage and place them out in the driveway directing [sic] facing the Bonam home.

Appellant's App. at 46.

[11] John contends that these facts cannot serve as a basis for the protective order because he has a constitutional right under the First Amendment to post a no-trespassing sign on his property. Appellant's Br. at 28 (citing *Dolecky v. Borough of Riverton*, 538 A.2d 856, 858 (N.J. Super. 1987)). We need not address this contention, however, because John's placement of the bullseye targets near the

Bonams' property line is not a constitutionally protected activity. *See Superior Constr. Co. v. Carr*, 564 N.E.2d 281, 284 (Ind. 1990) ("[A]s a matter of jurisprudence, we do not decide cases upon constitutional grounds when they can be decided upon other grounds."). John argues that this conduct "should not be considered 'impermissible contact' as required by § 35-45-10-2[,]" which defines harassment, which in turn is an essential element of stalking. Appellant's Br. at 29. As indicated above, however, harassment is "conduct directed toward a victim that includes *but is not limited to* repeated or continuing impermissible contact[.]" Ind. Code § 35-45-10-2 (emphasis added). Thus, harassment may be something other than impermissible contact. And we conclude that John's placement of the bullet-riddled[3] targets facing the Bonams' home constitutes harassment, in that it would "cause a reasonable person to suffer emotional distress" and actually caused Tracy to suffer emotional distress. *Id.*; *see* Tr. at 281 ("[W]hen the bullet target came up, I was … scared.").[4]

---

[3] *See* Petitioner's Ex. 10 (photograph of targets).

[4] John asserts that although Tracy might have been scared in 2012, she was no longer scared in April 2013 because she told him that she was not scared of him and recorded that in her diary. Tracy testified that this was merely one of two instances in which she "stood up for [her]self," Tr. at 330, and that when she learned at the hearing about "all of the weapons that [John] has in his house, [she was] a hundred times more afraid of him now." *Id.* at 317.

*Allegation 2*

[12]   Tracy also alleged that in August 2012, John pulled into her driveway next to her daughter's car.

> At this point in time [John] began shouting obscenities at [Tracy], including calling her a "fat ass". [Tracy] informed [John] that he was trespassing on their property and asked him not to park on their property anymore. [John] pulled his arm back in a threatening gesture as if to strike [Tracy]. While he was doing this, he continued to shout obscenities at [Tracy]. [John] then began backing his truck up as if he was going to hit [Tracy] or her truck. [Tracy] feared that [John] would be hitting her truck so she got in her truck. [Tracy] started to call Security on her cell phone, and [John] drove through the guard and onto another property owner's driveway and then went to his home.

Appellant's App. at 46.

[13]   John observes that he cited this incident in his petition for a protective order against Tracy[5] and the trial court also found his allegation to be true. Citing *Tisdial v. Young*, 925 N.E.2d 783 (Ind. Ct. App. 2010), he asserts that these facts cannot serve as a basis for her protective order because Tracy admitted that she

---

[5] *See* Appellant's App. at 16 ("[John] was in reverse backing up next to [a neighbor's] driveway. [Tracy's] red truck entered the cul-de-sac and blocked [John] in. Tracy came out of her car and pounded on John's window. John rolled the window down and asked Tracy not to touch his truck. Tracy kept putting her hands on the truck around the window and shouting that she was going to have [him] arrested for trespassing. John told her to do what she had to do, but to move her truck to unblock [him]. Tracy then turned herself around with her back to John and with her thumbs inside her pants as if to drop her pants. John did not look to see any further. Since Tracy was still blocking the back of John's truck, John was able to use [the neighbor's] driveway to complete his ability to back down into his driveway."). There are obvious factual inconsistencies between Tracy's and John's accounts of the incident, but we need not dwell on them here.

was the "initiator and the aggressor." Appellant's Br. at 22. In *Tisdial*, based on the statutory definition of impermissible contact, another panel of this Court stated that "stalking requires some evidence that the actor is the one looking for the victim." 925 N.E.2d at 786. We respectfully disagree. Indiana Code Section 35-45-10-3 specifically states that impermissible contact "includes *but is not limited to* following or pursuing the victim." (Emphasis added.) Thus, impermissible contact may be something other than following or pursuing a victim. And, as we have already stated, harassment may be something other than impermissible contact.

[14] Here, Tracy acknowledged that she confronted John and "purposely touched" his truck against his wishes, but she stated that she did so because she was "tired of being bullied." Tr. at 289, 291. John responded by threatening to batter her with his fist and his truck. We conclude that this constitutes harassment, in that it would cause a reasonable person to suffer emotional distress and actually caused Tracy to suffer emotional distress. *See id*. at 290 (Tracy testifying that she "was shaking" and "too nervous" to call security and that she "went straight inside and had a meltdown" after the incident). Essentially, the trial court concluded that two wrongs did not make a right in this situation, and we see no reason to disagree.[6]

---

[6] Indiana Code Section 34-26-5-14 provides that a trial court may grant competing petitions for a protective order.

## *Allegation 4*

Next, Tracy alleged that in May 2013, John

> raised his fists and moved them in a circular motion while
> [Tracy] was out in her driveway awaiting relatives to come to her
> home for a visit. [John] had been walking up and down the cul-
> de-sac prior to this, when [Tracy] was outside and walking in an
> attempt to intimidate her.

Appellant's App. at 47. Here again, John cited this incident in his petition for a protective order against Tracy,[7] and the trial court found his allegation to be true. And here again, John contends that, pursuant to *Tisdial*, Tracy's allegation cannot serve as a basis for her protective order because she initiated the encounter. For the reasons stated above, we are unpersuaded by John's reliance on *Tisdial*.

John further contends that Tracy's allegation is baseless because she admitted that she did not feel "super threatened" by his actions. Tr. at 295. But this was

---

[7] *See* Appellant's App. at 17-18 ("John was headed home from walking the dog who was sniffing the grassy area in between [two neighboring] properties. John was in the middle of the cul-de-sac (at the base of [a neighbor's] driveway) looking down at the dog. John spit. This was 50-60 feet from the Bonam's [sic] driveway. John then heard [Tracy] say 'Don't spit at me.' John turned towards her and said nothing. Tracy was halfway up her driveway on her cell phone and said to someone 'He is out here harassing me.' John entered his driveway following the dog. John looked back at Tracy to ensure she wasn't following him. John, in no way, harassed her. Tracy said 'I am right here, come on,' with fists raised. A mini-van then entered the cul-de-sac and parked at the top of her driveway. Tracy stood next to the driver's door and said, 'There he is, he's the one.' John continued down his driveway and into his home."). John alleged that the incident occurred in June 2013.

only because she knew that her aunt was "going to pull around [the] corner at any second." *Id.*

### *Allegation 5*

[17] Tracy also alleged that in early June 2013, John

> blew dirt and leaves on to the Bonam property and hit [Doug] in an open wound that he had on his body. This resulted in a report to Security by the Bonam's [sic]. [John] received a letter on or about this date from the Foxcliff Estates North Homeowners Association's Attorney concerning [John's] conduct.

Appellant's App. at 47.

[18] John observes that the trial court found this allegation to be "true, but as to a different date" based on a video recorded by Tracy that, according to the trial court, shows John "intentionally blowing leaves over onto the Bonam property" but not onto Doug.[8] Tr. at 366. John complains that the court's "*sua sponte* declaration that [he] committed stalking based on [the video] must be reversed because it is unsupported by the evidence—the video shows no such thing—and was never an incident even alleged by Tracy to constitute harassment." Appellant's Br. at 25-26. Tracy correctly observes that John did

---

[8] The video was not submitted to this Court. The exhibits volume prepared by the court reporter states, "In accordance with Rule App. 7.2(A) (3) (b) of the Indiana rules of Appellate Procedure, Respondents's [sic] Exhibit Number 19, being a flash drive of videos is being retained in the custody of the Morgan Superior Court No. 1 until appeal is terminated." This rule was superseded in 2001 by Appellate Rule 29(B), which states, "Nondocumentary and oversized exhibits shall not be sent to the Court, but shall remain in the custody of the trial court or Administrative Agency during the appeal."

not object to the admission of the video or to the trial court's stated intention to view it outside of court, Tr. at 307, but there was no indication that the court would rely on that incident as substantive evidence of stalking. Moreover, as John points out, "Tracy provided no testimony that she, in fact, felt terrorized, frightened, intimidated, or threatened by this incident[.]" Appellant's Reply Br. at 5. In sum, we agree with John that evidence to support this allegation is lacking.

### *Allegation 6*

Finally, Tracy alleged that in September 2013, John

> waited for [her] to leave her home, as he had been watching her that particular day. He followed her out of the subdivision, and onto Maple Turn Road. This was done in a manner to continue to stalk her as he has done in the past concerning his name calling, his gestures, and his other acts of intimidation.

Appellant's App. at 48.

John cited this incident in his petition for a protective order against Tracy.[9] The trial court found his allegation to be true but opined that John "[came] to that incident with unclean hands. Yes, [Tracy] did act inappropriately, but it was in response to actions by [John] that were inappropriate." Tr. at 364. John claims

---

[9] *See* Appellant's App. at 18 ("September 18, 2013 at approximately 1:30 in the afternoon John had stopped at the mailboxes at the cul-de-sac in their subdivision. [Tracy] passed him up. Apparently both parties were going to town. John was approximately 5-6 car lengths behind [Tracy] on Maple Turn Road going towards Blue Bluff Road and she stuck her camera phone through the back window as if to be taking pictures of John's presence.").

that this allegation cannot serve as a basis for Tracy's protective order because "[t]he freedom to be on a public street is one of the personal liberties guaranteed by the federal constitution[.]" *VanHorn v. State*, 889 N.E.2d 908, 912 (Ind. Ct. App. 2008), *trans. denied*. But John cites no authority for the proposition that following someone on a public street with the intent to intimidate that person is a constitutionally protected activity.[10] *Cf.* Ind. Code § 9-21-8-55(c) ("A person who, with the intent to harass or intimidate a person in another vehicle, knowingly or intentionally engages in aggressive driving commits aggressive driving, a Class A misdemeanor ….").

\* \* \* \* \*

[21] At this point, we reiterate that the trial court did not specifically find that John committed stalking against Tracy based on any single allegation. Leaving aside the problematic Allegation 5, we conclude that the evidence regarding Tracy's remaining allegations is sufficient to support the trial court's conclusion that John committed stalking as defined by Indiana Code Section 35-45-10-1. In

---

[10] *See* Tr. at 298 (Tracy's testimony: "Well [John and I] come out at the same time and we're starting up our trucks at the same time. So of course I'm not going to go, I'm going to wait. So I sit in the car. I have an appointment with the vets and I've got my dogs in the car. And I call my mom and I talk to her for a minute. And [John] pulls up at the end of the drive […] and he sits there. And … it's at least … it's definitely over five minutes, you know. And then I tell my mom, I said, you know, I don't have much extra time to wait. I said he's … maybe he's waiting for somebody or something […], I said, so I'm just going to go ahead and go. So I go down the road.[…] So I pull out and then he goes right behind me. So I'm like going, oh my God mom. He was waiting on me. I said I'm getting off the phone and I'm calling Doug."); *id.* at 300 ("So I hold the phone up behind me and I snap, you know, some pictures. And then I … I'm going about eight miles an hour at this point. I'm going really slow. Because I'm hoping he'll just go by me. You know, if he's got somewhere to go, he'll just go on. But he doesn't. He kind of goes slow and stays behind me. So I take the picture. And then we get down to the end of the road, and I head towards Martinsville and he heads off that way towards Mooresville. So then I'm fine.").

other words, we conclude that the trial court did not err in concluding that John engaged in a knowing or an intentional course of conduct involving repeated or continuing harassment of Tracy that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and actually caused her to feel the same. Therefore, we affirm that portion of the protective order.[11]

## Section 2 – The trial court erred in imposing restrictions on John's use of his motorcycle.

[22] In addition to prohibiting John from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with [Tracy],", the protective order prohibits him from "leav[ing] his motorcycle running in his driveway for more than 5 minutes on any given day" and from "start[ing] it up until after 8:30 am." Appellant's App. at 7-8. John asserts that this restriction should "be reversed because it is not related to any of Tracy's alleged incidents and not mentioned by the trial court's findings of fact." Appellant's Br. at 38. Indeed, the motorcycle is mentioned only in John's petitions for protective orders against the Bonams and not in the Bonams' petition for a protective

---

[11] John complains that the foregoing incidents are too remote in time to support the protective order. We first observe that "[t]he trial court can consider the remoteness of incidents in determining whether an order is warranted, but that remoteness cannot be the *sole* reason for denial of a protection order." *E.W. v. J.W.*, 20 N.E.3d 889, 899 n.4 (Ind. Ct. App. 2014), *trans. denied* (2015). We further observe that the hearing on the petitions was continued several times at the parties' request and several times on the trial court's motion. The Bonams were subject to ex parte protective orders in favor of John during this time and thus were legally obligated to avoid interacting with him, which greatly reduced the opportunities for further mischief. And finally, we note that John did not make this argument at the hearing before the trial court and therefore has waived it on appeal. *Evergreen Shipping Agency Corp. v. Djuric Trucking, Inc.*, 996 N.E.2d 337, 340 (Ind. Ct. App. 2013)

order against John. *See* Appellant's App. at 17, 33 (John's allegation: "John warming up his Harley Davidson motorcycle to check the oil. John turned it off and heard Tracy state 'The judge is going to like this video.'"). Tracy offered no video regarding John's motorcycle use into evidence and did not testify about it, and Doug acknowledged that John had "gotten better" about "revving" the motorcycle. Tr. at 236.

[23] Tracy points out that when issuing a protective order, the court may "[o]rder other relief necessary to provide for the safety and welfare of a petitioner and each designated family or household member." Ind. Code § 34-26-5-9(b)(6). But this presumes that the relief was requested by the petitioner on behalf of herself and a family or household member, which it was not, or that the relief is reasonably related to the grounds for the petition, which it is not.[12] Therefore, we conclude that the trial court erred in this respect and vacate that portion of the protective order.

---

[12] Tracy asserts that the motorcycle issue is encompassed by Allegation 6 of her petition as to John's "other acts of intimidation." Appellant's App. at 48. This reference is so vague that we cannot agree. Tracy also asserts that the issue was tried by the consent of the parties pursuant to Indiana Trial Rule 15(B) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Because the issue was raised in reference to (and in response to) the allegation in John's petition, we disagree. We note that the protective order prohibits John from "annoying" Tracy. Appellant's App. at 7. If she finds John's revving of his motorcycle annoying, then she can seek relief through the proper channels.

## Section 3 – The trial court erred in ordering John not to do yard work or create noise with a motorized tool before 8:30 a.m.

[24]    The protective order also prohibits John from "do[ing] any yard work or creat[ing] any noise by way of a motorized tool until 8:30 a.m." Appellant's App. at 8. John notes that the neighborhood covenants and restrictions "expressly allow residents to use motorized tools beginning at 8:00 a.m." and argues that "Tracy agreed to these Covenants and Restrictions when she bought her home and has no legal right or justified expectation for something else." Appellant's Br. at 37. We agree with John that the restriction imposed by the trial court is excessive and inconsistent with neighborhood rules and expectations. Therefore, we conclude that the trial court erred in this respect and vacate that portion of the protective order.

## Section 4 – The trial court erred in ordering John to surrender his firearms.

[25]    At the conclusion of the hearing, the trial court stated,

> I find that because of [John's] use of the target, and the small [no trespassing] sign, both insinuating firearms and somebody's death, and his admission that he has multiple firearms and that he will take care of anybody who walks over onto his property, that a clear and convincing threat of use of a deadly weapon of [sic] firearms exists. Therefore, I'm ordering that he be Brady disqualified, and the Sheriff per the written order and decree issued today go to his residence yet this afternoon and seize all firearms ….

Tr. at 366-367.

[26] "Brady disqualified" is a reference to the Brady Handgun Violence Prevention Act, which states in pertinent part that any person who is subject to a court order that "restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person" is prohibited from possessing a firearm. 18 U.S.C. § 922(g)(8). 18 U.S.C. § 921(a)(32) defines "intimate partner" as "the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person." The protective order indicates that John is "Brady disqualified." Appellant's App. at 6. The order further states,

> Pursuant to 18 U.S.C. 922(g), once a respondent has received notice of this order and an opportunity to be heard, it is a federal violation to purchase, receive or possess a firearm while subject to this order if the protected person is:
>
> (A) The respondent's current or former spouse;
>
> (B) A current or former person with whom the respondent resided while in an intimate relationship; or,
>
> (C) A person with whom the respondent has a child.

*Id*. at 9.

[27] John points out that he is not an "intimate partner" of Tracy for purposes of 18 U.S.C. § 922 and that the protective order specifically states that it "does not

protect an intimate partner or child." Appellant's App. at 7. Thus, he argues, the trial court erred in ordering him to surrender his firearms to the county sheriff. As mentioned above, the motions panel of this Court stayed this portion of the protective order and directed that his firearms be returned.

[28] Tracy contends that the trial court was authorized to order John to surrender his firearms pursuant to Indiana Code Section 34-26-5-9(c), which provides in pertinent part that a court may

> [p]rohibit a respondent from using or possessing a firearm, ammunition, or a deadly weapon specified by the court, and direct the respondent to surrender to a specified law enforcement agency the firearm, ammunition, or deadly weapon for the duration of the order for protection unless another date is ordered by the court.

Subsection (f) of the statute contains a similar provision ("Upon a showing of domestic or family violence by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence. The relief may include an order directing a respondent to surrender to a law enforcement officer or agency all firearms, ammunition, and deadly weapons: (1) in the control, ownership, or possession of a respondent; or (2) in the control or possession of another person on behalf of a respondent; for the duration of the order for protection unless another date is ordered by the court.").

[29] John points out that these provisions were not cited by the trial court and are not mentioned in the protective order. Also, he asserts that Indiana's

"protective order statutes as a whole make clear that 34-26-5-9(f) is simply the state law vehicle to effectuate the mandates of 18 U.S.C. § 922(g), not an independent grant of authority to confiscate weapons every time a protective order is entered." Appellant's Reply Br. at 17; *see, e.g.*, Ind. Code § 34-26-5-9(d)(5) ("The court shall … indicate in the [protective] order if the order and the parties meet the criteria under 18 U.S.C. 922(g)(8)"). John's argument is compelling, but we need not address it because the trial court relied solely on 18 U.S.C. § 922(g) in ordering him to surrender his firearms, and that statute does not apply in this case because Tracy is not John's "intimate partner." Therefore, we vacate that portion of the protective order.

[30] Affirmed in part and vacated in part.

Baker, J., and Najam, J., concur.