## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 26 2016, 9:21 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

James Chaplin
Bloomington, Indiana

APPELLEE PRO SE

J.S.
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Chaplin, <br> *Appellant,* <br><br> v. <br><br> J.S., <br> *Appellee.* | April 26, 2016 <br><br> Court of Appeals Cause No. 53A01-1510-PO-1637 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable E. Michael Hoff, Judge <br><br> Trial Court Cause No. 53C01-1506-PO-989 |

**Barnes, Judge.**

## Case Summary

James Chaplin appeals the trial court's order granting an order for protection to J.S. We affirm.

## Issue

Chaplin raises one issue, which we restate as whether the evidence was sufficient to support the issuance of an order for protection.

## Facts

Chaplin and J.S. are neighbors in Bloomington. J.S. and his family moved into their house approximately one year prior to the trial in this matter. Chaplin[1] has a driveway easement that runs across J.S.'s property, and there is an ongoing dispute, including what appears to be some kind of legal action, regarding that easement.

J.S. testified Chaplin has verbally abused him and made "threatening remarks," including being called "you ignorant son of a b**** and fat bast*** . . . ." Tr. pp. 8, 18. He testified, "a lot of verbal assaults. You can't go down there around close to the property line without getting a verbal assault . . ." *Id.* at 9 (ellipses in original). He testified Chaplin threatened him with a gun:

> [I]t was in June, I believe. I was out working in the garden and he was hollering and, and I looked over and he had his, he was

---

[1] We acknowledge that Mr. Chaplin's wife, not Mr. Chaplin, owns the property on which the Chaplin family lives. *See* Tr. p. 24.

giving verbal assaults, and I went down to get the mail ask him
what his problem was, and he pulled a gun on me and said, I'll
kill you, you fat f****er. You better mow your grass or I'll kill
ya. And he had a gun. He was shaking it at me.

*Id.* at 6. J.S. also testified that Chaplin has driven in J.S.'s yard, thrown trash in his yard, and pulled up survey stakes on J.S.'s property. When J.S. replaced the stakes, Chaplin "made some remarks, threatening remarks, so I called the Sheriff then." *Id.* at 8. J.S. has called the sheriff more than once in response to Chaplin's actions. When J.S.'s children walk up and down the driveway, he supervises them. J.S. testified, "it's just not safe," "I don't feel safe for my kids," and, "I just want . . . our family to be safe." *Id.* at 10, 16, 17.

[5] On June 8, 2015, J.S. filed a petition for an order of protection and requested a hearing. On September 16, 2015, the trial court heard evidence in this matter. The trial court took the matter under advisement but issued an order of protection in J.S.'s favor that same day. The trial court's order enjoined Chaplin from threatening to commit or committing acts of stalking against J.S. and his family members. It further prohibited Chaplin from using or possessing a firearm, ammunition, or a deadly weapon and required him to surrender the same on or before September 25, 2015. Chaplin appeals.

# Analysis[2]

The Indiana Civil Protection Order Act was designed to promote protection and safety for all victims of domestic or family violence in a fair, prompt, and effective manner and to prevent future domestic and family violence. Ind. Code § 34-26-5-1. "Domestic or family violence" includes stalking, "whether or not the stalking . . . is committed by a family or household member." I.C. § 34-6-2-34.5. "Stalking" means:

> a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened. The term does not include statutorily or constitutionally protected activity.

I.C. § 35-45-10-1. "Harassment" is defined by Indiana Code Section 35-45-10-2 as, "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include statutorily or constitutionally protected activity . . . ." "Impermissible contact includes but is not limited to knowingly or intentionally following or pursuing the victim." I.C. § 35-45-10-3. When a protection order petitioner proves by a preponderance of the evidence

---

[2] We note that the Appellees's Appendix contains several documents that were not admitted into evidence. We have not considered these documents in our review of this matter.

that the respondent "represents a credible threat to the safety of a petitioner or a member of a petitioner's household," the trial court "shall" grant the relief necessary to cause the violence or threat of violence to cease. I.C. § 34-26-5-9.

[7] "Protective orders are similar to injunctions, and therefore in granting an order the trial court must sua sponte make special findings of fact and conclusions thereon." *Fox v. Bonam*, 45 N.E.3d 794, 798 (Ind. Ct. App. 2015). Our standard of review is two-tiered: first we determine whether the evidence supports the findings and then whether the findings support the order. *Id.* "In deference to the trial court's proximity to the issues, we disturb the order only where there is no evidence supporting the findings or the findings fail to support the order." *Id.* We do not reweigh evidence or reassess the witnesses' credibility. *Id.* "The party appealing the order must establish that the findings are clearly erroneous." *Id.*

[8] Chaplin contends the evidence is not sufficient to support the issuance of the protective order. He relies on *Tisdial v. Young*, which states, "we do not believe the general assembly intended orders for protection under the CPOA to serve as a remedy for a situation that entailed fighting between unrelated individuals." 925 N.E.2d 783, 786 (Ind. Ct. App. 2010). *Tisdial* is readily distinguishable from this case. In that case, Young was annoyed because Tisdial frequently left bread on a walking path in their shared apartment complex. *Id.* at 783. Young confronted Tisdial, and Tisdial ran toward her and threatened to spray her with a can of mace. *Id.* Approximately a month later, Young "yelled" at Tisdial regarding the bread, and Tisdial ran toward her and sprayed her with mace

several times. *Id.* Young then bruised Tisdial by swinging her dog leash at her. *Id.* This Court concluded the evidence was not sufficient to support the order of protection because "there is no evidence Tisdial came looking for Young. To the contrary, their encounters in the Park resulted from the fact both women walked in the Park on a daily or near-daily basis, and Young verbally initiated each encounter." *Id.* at 786.

[9] In contrast, the evidence in this case is that Chaplin repeatedly sought out or pursued J.S. in order to verbally assault and threaten him and, on one occasion, to threaten him with a firearm. These incidents happened repeatedly, and, we conclude they would cause a reasonable person to suffer emotional distress and feel "terrorized, frightened, intimidated, or threatened." I.C. 35-45-10-1. J.S. testified regarding concerns for his safety and the safety of his family. We further conclude the trial court could reasonably infer from this testimony that J.S. actually did suffer emotional distress and felt "terrorized, frightened, intimidated, or threatened." *Id.* The evidence in this case is that Chaplin stalked J.S., and the evidence supports the trial court's order. We may not reweigh the evidence or reassess Chaplin's or J.S.'s credibility. Chaplin has not established clear error. *Fox*, 45 N.E.3d at 798.

## Conclusion

[10] The evidence is sufficient to support the trial court's issuance of an order of protection in J.S.'s favor. We affirm.

[11] Affirmed.

Vaidik, C.J., and Mathias, J., concur.